# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

RUBIN YOUNG, SYBEL W. LEE,
KEITH WILSON, WILLIE A. THOMAS, et al.,

                Plaintiffs,

                v.

Case No.: 25-cv-23025-MFE



FILED BY_____/_____D.C.

JUL 07 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

HON. DONALD J. TRUMP, in his official capacity as President of the United States;
HON. PAM BONDI, in her official capacity as Attorney General of the United States;
HON. SCOTT TURNER, in his official capacity as Secretary of Housing and Urban Development;
HON. RON DESANTIS, in his official capacity as Governor of the State of Florida; HON. RYAN
UTHMEIER, in his official capacity as Attorney General for the State of Florida; HON.
DANIELLE LEVINE CAVA, in her official capacity as Mayor of Miami-Dade County, et al.,

_____/

## VERIFIED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF

### TABLE OF CONTENTS

**Section**            **Page No.**

**PART I. – INTRODUCTION** .................................................................................6

**PART II. – JURISDICTION AND VENUE** ...........................................................7

**PART III. – PARTIES** ............................................................................................7

**PART IV. – HISTORICAL CONTEXT AND SYSTEMIC ERASURE** ................8

  a. The Indigenous of America People — Inherent Sovereignty and Pre-Existing Rights.........8

  b. The Descendants of Enslaved Africans — Wrongful Citizenship Reinterpretation............9

1

**Part II: Indigenous of America People — Legal Status, Rights, and Violations**............10

A. Pre-constitutional Recognition................................................................10

B. U.S. Policies That Violated Inherent Rights....................................................10

C. Citizenship Without Consent — A Legal Fraud..................................................11

D. Misclassification and Legal Reclassification....................................................11

**Part III: Legal Status of Freedmen Descendants and the Fallacy of Expanded Birthright Citizenship**.......................................................................................11

A. The 14th Amendment as Emancipatory Law.....................................................11

B. Wong Kim Ark: Judicial Overreach and Misapplication.........................................12

C. Political and Economic Ramifications..........................................................12

**PART V. – MODERN-DAY CRISIS AND FACTUAL ALLEGATIONS** ...........................13

Claim One: Inherent Sovereignty and Rights of the Indigenous of America People...............15

Claim Two: Misapplication of 14th Amendment Birthright Citizenship............................16

Shared Standing and Legal Nexus...............................................................17

**PART VI. – LEGAL ANALYSIS OF BIRTHRIGHT CITIZENSHIP UNDER THE 14TH AMENDMENT**...................................................................................18

   a.   Analysis of the Fallacy of Birthright Citizenship Under the 14th Amendment............18

   b.   Judicial Misinterpretation: United States v. Wong Kim Ark (1898)........................18

   c.   Political Distortion and Consequences.....................................................19

   d.   Legislative and Executive Attempts at Reaffirmation......................................19

   e.   Conclusion: The Need for Restoration.....................................................19

**PART VI.A – DUAL SOVEREIGNTY ARGUMENT FOR INDIGENOUS AND FREEDMEN** ...................................................................................19

a. Legal Framework and Remedies for the Sovereign Status of Indigenous of America People..................................................................................20

b. Inherent Sovereignty Preceding U.S. Jurisdiction...............................................20

c. Constitutional and Judicial Recognition..........................................................20

d. Inapplicability of the Reconstruction Amendments............................................20

e. International Norms Supporting Sovereignty.....................................................20

f. Remedial Measures Sought..........................................................................21

g. Separation from Birthright Citizenship Claims.................................................21

**PART VII. – ADDENDUMS SUPPORTING ARGUMENT FOR LEGAL, POLITICAL,
AND ECONOMIC RESTORATION** ...................................................................21

Addendum 1: Legal Barriers and Sovereignty Distinctions......................................21

Addendum 2: Political Will and Ongoing Suppression...........................................21

Addendum 3: Pattern of Federal and State Neglect...............................................22

Addendum 4: Distinct Remedies Must Be Acknowledged.........................................22

**PART VIII: CONCLUSION — A CALL FOR HISTORIC JUSTICE**............................22

Indigenous People of this Land.......................................................................23

**PART IX -- STRONG CLOSING ARGUMENT FOR SEPARATE REMEDIES AND
FINAL APPEAL TO THE COURT**.....................................................................23

A CALL TO HISTORICALLY CORRECT, NOT CONFLATE.....................................23

**A. HISTORICAL AND LEGAL FOUNDATIONS ESTABLISH DISTINCTNESS**.........23

1. The Indigenous of America Peoples Hold Pre-Constitutional Sovereignty.....................24

2. The 14th Amendment Was a Specific Constitutional Response to Slavery.....................24

3. Separate Harms Require Separate Legal Frameworks and Remedies...........................25

**B. HISTORICAL RECORD DEMANDS DISTINCT RECOGNITION**.......................25

1. The Genocide of Indigenous Peoples Must Be Acknowledged on Its Own Terms..............25

2. The Legacy of Slavery Is a Constitutional Betrayal Still Unrepaired...........................25

**C. JUDICIAL EFFICIENCY DOES NOT JUSTIFY MORAL COLLAPSE**...............26

**D. FINAL APPEAL: LET THIS COURT RENDER A DECISION WORTHY OF HISTORY**................................................................................26

**PART X. – APPENDICES**................................................................27

Appendix A: Historical Timeline of Indigenous Sovereignty Violations...........................27

Appendix B: Historical Timeline of Freed Slave Descendants and Citizenship Struggles.........27

Appendix C: Key Legal Precedents................................................................27

Appendix D: Supporting International Legal Norms...................................................28

**PART XI: PRAYER FOR RELIEF A DEMAND FOR SEPARATE BUT EQUAL JUSTICE — ROOTED IN HISTORY, LAW, AND TRUTH**.....................................28

I. CLASS CERTIFICATION................................................................28

II. DECLARATORY RELIEF: RESTORING SOVEREIGNTY AND CITIZENSHIP CLARITY................................................................29

III. INJUNCTIVE RELIEF: HALTING CONTINUED ABUSES..............................29

IV. RESTORATION AND REPARATIONS: TANGIBLE REDEMPTION.......................30

V. RECOGNITION OF HISTORICAL LEADERSHIP AND CULTURAL PRESERVATION................................................................30

VI. TRUTH AND RECONCILIATION COMMISSION WITH ENFORCEMENT POWER................................................................31

VII. ACCOUNTABILITY IN GOVERNANCE AND FUND ADMINISTRATION.............31

VIII. AUDITS, COMPLIANCE, AND TRANSPARENCY..................................31

IX. LEGAL COSTS AND FURTHER EQUITABLE RELIEF.................................32

**PART XII. – CERTIFICATES**................................................................33

CERTIFICATE OF COMPLIANCE................................................................33

CERTIFICATE OF INTERESTED PARTIES.......................................................34

CERTIFICATE OF SERVICE................................................................36

4

STATEMENT OF INTEGRITY.................................................................37

## TABLE OF AUTHORITIES

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. I, § 2 (Three-Fifths Compromise) ..................................9

U.S. Const. art. IV, § 4 (Guarantee Clause) .....................................11, 16

U.S. Const. amend. XIII (Abolition of Slavery) .................................. 9, 12, 13, 18, 20, 24, 29

U.S. Const. amend. XIV (Fourteenth Amendment) .................. 9, 11, 12, 13, 15, 18, 20, 24, 29

U.S. Const. amend. XV (Voting Rights) .................................9, 13, 20, 25, 29

**FEDERAL STATUTES AND PUBLIC LAWS 28 U.S.C. § 1391** (Venue) ........................3

28 U.S.C. § 2201 (Declaratory Judgment Act) ......................................8

42 U.S.C. § 1983 (Civil Rights Act Enforcement) ............................17, 28

Indian Removal Act of 1830 ......................................10, 16, 20, 21

Dawes Act of 1887 ...............................................................10, 20

Indian Citizenship Act of 1924 ..............................................10

Public Law 88-452 (Economic Opportunity Act of 1964) ...................14, 31

Public Law 92-424 (Amendment 1972) ......................................14, 31

Public Law 93-644 (Amendment 1975) ......................................14, 31

Public Law 95-568 (Amendment 1978) ......................................14, 31

Federal Rule of Civil Procedure 23 ...........................................28

United Nations Genocide Convention, Article II ........................ 10, 17

Johnson v. M'Intosh, 21 U.S. (8 Wheat.) 543 (1823) .........................8, 15

Cherokee Nation v. Georgia, 30 U.S. (5 Pet.) 1 (1831) ....................20, 24

Worcester v. Georgia, 31 U.S. (6 Pet.) 515 (1832) ........................20, 24

Dred Scott v. Sandford, 60 U.S. (19 How.) 393 (1857) ................................9, 16, 18, 24, 28, 38

United States v. Wong Kim Ark, 169 U.S. 649 (1898)...........9, 12, 16, 18, 19, 20, 21, 24, 28, 38

Harper v. Virginia Board of Elections, 383 U.S. 663 (1966) ....................................................28

Monell v. Department of Social Services, 436 U.S. 658 (1978) ................................................28

**International Treaties and Declarations**

Universal Declaration of Human Rights (UDHR), Articles 1, 15, 21...............................17

International Covenant on Civil and Political Rights (ICCPR)...............................17, 28

Convention on the Elimination of Racial Discrimination (CERD)......................................17

United Nations Declaration on the Rights of Indigenous People (UNDRIP)..............17, 20, 28

United Nations Genocide Convention, Article II..........................................10, 17, 28

## PART I. - INTRODUCTION

Plaintiffs bring this action on behalf of two distinct but historically intertwined groups: Indigenous of America People — the original sovereign inhabitants of these lands — and descendants of enslaved Africans born within the United States, entitled to birthright citizenship under the Fourteenth Amendment.

Both groups have suffered egregious, centuries-long injustices perpetrated through federal, state, and local government actions, including:

- Systematic dispossession and erasure of Indigenous of America People lands, rights, and identities;

- Judicial misinterpretation and political distortion of birthright citizenship protections meant for freed slaves and their descendants;

- Political neglect and corruption resulting in diversion of federal anti-poverty funds away from their communities;

- Denial of leadership and administrative control over programs designed for their benefit, exemplified by the unlawful removal and suppression of Mrs. Mary Lee Hill, National Regional Community Service Administration Director and key architect of the Economic Opportunity Acts' anti-poverty initiatives.

Resource limitations prevent separate federal filings on these issues, but Plaintiffs assert that these claims, while distinct, represent parts of an overarching pattern of systemic abuse designed to maintain both groups in conditions tantamount to involuntary servitude.

Plaintiffs seek declaratory relief, equitable remedies, reparations, and injunctive orders to restore constitutional protections and economic justice.

## PART II. - JURISDICTION AND VENUE

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) for claims arising under the Constitution and civil rights statutes, including 42 U.S.C. § 1983.

Venue is proper under 28 U.S.C. § 1391(b) because defendants reside or work in this district, and events central to the claims occurred here.

## PART III. - PARTIES

1. Plaintiff Rubin Young is a descendant of freed slaves and Indigenous Americans peoples residing in Miami-Dade County, Florida, representing all similarly situated Indigenous Americans.

2. Defendant United States of America has failed to uphold constitutional protections and international obligations to Indigenous Americans.

3. Defendant Miami-Dade County, a political subdivision of Florida, has implemented and enforced charter-based policies—including the unilateral designation of

4. Neighborhood Revitalization Strategy Areas (NRSAs)—that disenfranchise and displace Indigenous Americans residents in favor of non-Indigenous Americans, foreign-born developers and elites.

5. Additional Defendants include state agencies, local housing authorities, and federally funded entities complicit in the misallocation of funds and suppression of Indigenous Americans interests.

## PART IV. - HISTORICAL CONTEXT AND SYSTEMIC ERASURE

The dual injustice against (1) the Indigenous of America people, and (2) the descendants of enslaved Africans, lies at the core of American constitutional failure. This section lays the groundwork to demonstrate how their distinct identities and legal statuses were deliberately erased, manipulated, and commodified to serve federal expansion, corporate profiteering, and systemic racial hierarchy.

### A. The Indigenous of America People — Inherent Sovereignty and Pre-Existing Rights

Before the arrival of European settlers, the Indigenous of America people were the original stewards of the land, with distinct systems of governance, spiritual belief, and trade that operated independently of colonial legal frameworks. Their natural rights and community-based jurisdiction predate the U.S. Constitution and require no grant or recognition by any U.S. government agency, president, or constitutional amendment.

Contrary to the legal fiction established in *Johnson v. M'Intosh*, 21 U.S. (8 Wheat.) 543 (1823), which stripped Indigenous land rights under the guise of "discovery doctrine," these communities retained inherent citizenship by virtue of birth, land, and lineage. The Court's ruling, which supported federal seizure and real estate speculation, constituted the first legal architecture

8

of genocidal displacement—a framework later echoed in boarding school policies, land allotment acts, and citizenship assimilation.

The U.S. government's attempt to impose a corporate definition of "citizenship" upon Indigenous of America people is fraudulent. As of July 2025, no treaty, statute, or executive order has extinguished the inherent and preeminent rights of these peoples as sovereign custodians of this land. The 13th, 14th, and 15th Amendments were never intended to—and do not—define the citizenship of Indigenous of America people. Their rights are divine, ancestral, and non-transferable.

## B. The Descendants of Enslaved Africans — Wrongful Citizenship Reinterpretation

In 1868, the 14th Amendment was ratified to confer full citizenship upon the freedmen—those formerly held in bondage and their children. Its adoption directly overturned *Dred Scott v. Sandford*, 60 U.S. 393 (1857), which declared that people of African descent could never be U.S. citizens. The amendment was a moral, political, and legal covenant to remedy slavery and establish a permanent constitutional status for the newly freed.

However, since *United States v. Wong Kim Ark*, 169 U.S. 649 (1898), the clause "subject to the jurisdiction thereof" has been grossly expanded beyond its intended meaning. The Court's misinterpretation opened the door for foreign nationals—who owe no political allegiance to the United States—to claim birthright citizenship. This decision, which never ruled on undocumented immigration or emancipated slaves, became the cornerstone of judicial overreach and legislative impotence.

Through redistricting, gentrification, voter suppression, and denial of reparations, the descendants of slaves have seen their constitutional citizenship diluted and their foundational role in America's legal birthright system erased. Congress's failure to codify the original intent of the

9

Reconstruction Amendments reflects a deliberate policy to maintain these Americans in a state of economic, cultural, and political bondage.

Both groups—distinct in legal history but similar in imposed suffering—were stripped of recognition, land, and lineage through bureaucratic fraud, public deception, and a racist reinterpretation of federal power. These historical truths form the basis of this complaint and substantiate the demand for emergency relief, judicial recognition, and full constitutional enforcement.

**Part II: Indigenous of America People — Legal Status, Rights, and Violations**

The Indigenous of America people, also referred to throughout this document as the original, pre-constitutional inhabitants of the land now called the United States, have always maintained inherent sovereignty. Their legal status is not derived from any act of Congress or constitutional provision, but from their ancestral, spiritual, and territorial relationship to the land.

**A. Pre-constitutional Recognition**

Early foundational records acknowledge their autonomy. George Washington and Benjamin Franklin both recognized tribal nations as independent political entities. Article I, Section 8 of the U.S. Constitution granted Congress the power to regulate commerce with the "Indian Tribes," not to extinguish them. However, over time, the federal government exploited this clause to coerce assimilation.

**B. U.S. Policies That Violated Inherent Rights**

1. **The Indian Removal Act of 1830** — Mandated the forced relocation of Indigenous communities, resulting in death, displacement, and theft of land.

2. **Dawes Act of 1887** — Broke up communal lands into allotments, facilitating corporate and white settler acquisition of territory.

3. **Indian Citizenship Act of 1924** — Fraudulently presumed that Indigenous Americans were not already citizens, unlawfully subjecting them to federal jurisdiction under a foreign definition.

4. **Termination Era (1940s–60s)** — Dissolved tribal recognition and eliminated sovereign status without consent.

5. **Federal Boarding Schools** — Institutionalized erasure of language, customs, and names; mass graves and abuse are documented.

These policies represent clear patterns of constitutional violation, racial subjugation, and crimes against humanity.

## C. Citizenship Without Consent — A Legal Fraud

The Indigenous of America people never voluntarily joined the U.S. Corporation. Citizenship, as constructed by U.S. laws, was imposed without treaty, contract, or vote. No other group in U.S. history has been subjected to forced citizenship while simultaneously being stripped of land, children, names, and self-governance. This alone forms grounds for injunctive relief and constitutional exemption.

## D. Misclassification and Legal Reclassification

Census and legal documents have reclassified Indigenous of America people as "colored," "Negro," "Black," or even "white" to obscure their ancestry and disqualify their claims to land or sovereignty. These administrative frauds were systematic and intentional.

Thus, any attempt to subordinate Indigenous citizenship claims under the 14th Amendment is both unlawful and a form of continued servitude. Their rights are **inherent, permanent, and beyond amendment**.

## Part III: Legal Status of Freedmen Descendants and the Fallacy of Expanded Birthright Citizenship

## A. The 14th Amendment as Emancipatory Law

The Fourteenth Amendment, ratified in 1868, was a legal response to over 200 years of chattel slavery and denial of human rights. Its citizenship clause was designed to secure national belonging for freedmen and their children—not to create a universal, automatic citizenship for all individuals born within the territorial bounds of the United States.

When interpreted in its historical context, the phrase "subject to the jurisdiction thereof" excluded:

- Children of foreign diplomats
- Members of sovereign Native American nations
- Enemy aliens during wartime
- Undocumented immigrants

The Amendment's architects—including Senator Jacob Howard and Representative John Bingham—expressly clarified these exclusions during Congressional debates. The U.S. Supreme Court has never affirmatively granted citizenship to children born of undocumented persons.

## B. Wong Kim Ark: Judicial Overreach and Misapplication

In *United States v. Wong Kim Ark* (1898), the Court ruled that a child born to legal Chinese immigrants was a U.S. citizen. This case involved legally domiciled immigrants, not individuals residing unlawfully. The decision has been erroneously extended to justify so-called "anchor baby" claims.

This misapplication undermines the specific constitutional protections promised to the freedmen and their descendants. By broadening the scope of birthright citizenship, it diluted the very class the amendment was designed to protect, thereby eroding the 13th and 14th Amendments' original civil rights mission.

12

### C. Political and Economic Ramifications

The misinterpretation of the Citizenship Clause has led to:

- Demographic manipulation and gerrymandering

- Disproportionate denial of federal aid to African-American communities

- Political displacement in urban redevelopment zones

- Resource diversion from descendant communities to undocumented populations

This distortion represents an intentional breach of equal protection principles, the erosion of freedmen's rights, and the perpetuation of neo-slavery through policy design.

## PART V: MODERN-DAY CRISIS AND FACTUAL ALLEGATIONS

1. The Plaintiffs, acting pro se, submit this complaint on behalf of two distinct but historically intertwined classes: a. The Indigenous of America people, whose sovereignty predates the existence of the United States and whose inherent rights to land, autonomy, and self-determination have never been lawfully extinguished or ceded. b. The descendants of enslaved Africans, whose claim to U.S. birthright citizenship was codified under the 14th Amendment but whose legal, civil, and economic rights have been continually denied through government action, judicial neglect, and systemic exclusion.

2. Indigenous of America people have never required the 13th, 14th, or 15th Amendments for citizenship. Their status as original and lawful inhabitants of this land predates the Constitution and all forms of U.S. governance. Any legal framework imposed by the United States that seeks to define or diminish this inherent citizenship status constitutes an unlawful usurpation of sovereignty.

3. Conversely, the descendants of enslaved Africans were denied legal personhood until the Civil War Amendments—particularly the 14th Amendment—were ratified to guarantee

their citizenship and equal protection under the law. The intentional misapplication of these protections to foreign nationals has nullified their original purpose.

4. Plaintiffs allege that federal and state actors, through a pattern of abuse, obstruction, and fraudulent redirection of economic and political resources, have contributed to the continued disenfranchisement of both groups:

   o By denying the sovereign status of Indigenous of America peoples and misclassifying them under tribal registries or foreign designations.

   o By usurping federal anti-poverty and reparative legislation originally earmarked for the descendants of enslaved Africans, instead distributing benefits to newly arrived immigrant populations and politically favored entities.

5. Plaintiffs allege that this dual injury—rooted in foundational constitutional betrayal—has placed both protected classes into a de facto state of involuntary servitude. This condition is perpetuated by policies that:

   o Sanction displacement through gentrification,

   o Redirect earmarked economic opportunity funds,

   o Suppress political representation through redistricting and voter dilution,

   o Refuse judicial enforcement of long-standing constitutional claims.

6. Plaintiffs further allege that these injuries are neither accidental nor incidental but stem from an established pattern of discriminatory and malicious conduct by U.S. institutions and their political proxies. A historical case in point is the treatment of Mrs. Mary L. Hill, the original architect of the Economic Opportunity Acts and Amendments. Her removal and erasure from federal leadership positions demonstrate a broader conspiracy to suppress

14

effective Black leadership and deny reparative outcomes to the communities entitled by law to receive them.

7.  This complaint incorporates the systematic removal of protections and denial of access to land, identity, and federal funds through fraudulent classifications and reinterpretation of law. Indigenous of America people have been stripped of birth records, reclassified as foreign, and denied recognition as a sovereign entity, while the descendants of former slaves have had their constitutional guarantees extended to those who were never part of the historical harm the 14th Amendment sought to address.

8.  Plaintiffs argue that the bifurcation of legal status—between those with inherent sovereignty and those protected by the 14th Amendment—must be recognized and restored to prevent further legal, political, and economic erasure.

9.  The failure to act now prolongs the original sin of racial hierarchy, legal erasure, and economic theft. It denies the very purpose for which constitutional amendments were written and perpetuates a regime of structural exclusion in direct violation of the Constitution and natural law.

Plaintiffs assert two distinct legal claims arising from separate but historically interconnected injuries:

**Claim One: Inherent Sovereignty and Rights of the Indigenous of America People**

1.  The Indigenous of America people are not subject to the 13th, 14th, or 15th Amendments because their sovereign identity predates and exists independently of the United States Constitution. Their citizenship is not granted by government but inherited through origin, land stewardship, and inherent nationhood. See *Johnson v. M'Intosh*, 21 U.S. (8 Wheat.)

543 (1823) (acknowledging tribal sovereignty but subordinating land claims under European dominion).

2.  Historical facts show that from 1492 through the 1800s, Indigenous people were subjected to colonization, Christianization, and violent conquest, including the Doctrine of Discovery and the Indian Removal Act of 1830. These policies aimed to extinguish inherent sovereignty and assimilate Indigenous peoples under federal dominion.

3.  Courts have upheld tribal sovereignty but never fully restored the inherent sovereign rights of Indigenous of America people who were dispossessed, reclassified, and denied equal treatment through fraudulent treaties and administrative action. This complaint seeks to reassert those inherent rights.

4.  The federal government's failure to recognize these people as sovereign—despite their continued existence, land claims, and governance—has violated the Guarantee Clause of Article IV, Section 4 of the U.S. Constitution.

5.  The appropriate remedy is not assimilation into existing laws for immigrants or citizens but sovereign recognition, reparative justice, and legal protections rooted in Indigenous autonomy and historical restoration.

**Claim Two: Misapplication of 14th Amendment Birthright Citizenship**

6.  The 14th Amendment was ratified in 1868 to correct the Supreme Court's ruling in *Dred Scott v. Sandford*, 60 U.S. 393 (1857), which held that enslaved Africans and their descendants could never be citizens. Its purpose was to confer full legal personhood and protection to freed slaves—not to grant unrestricted birthright citizenship to foreign nationals.

7. In *United States v. Wong Kim Ark*, 169 U.S. 649 (1898), the Supreme Court ruled that a child born in the U.S. to lawful Chinese residents was a citizen under the 14th Amendment. However, the Court did not rule on children born to undocumented immigrants, and its holding has since been misused to extend constitutional protections far beyond original intent.

8. Plaintiffs argue this expansion dilutes the protection meant specifically for descendants of enslaved Africans and results in financial, political, and cultural displacement.

9. Plaintiffs seek declaratory relief stating that the 14th Amendment's protections do not extend to children of individuals who were not themselves subject to U.S. jurisdiction at the time of birth, and that the historical beneficiaries of the amendment—descendants of U.S.-emancipated slaves—are entitled to reparative protections.

**Shared Standing and Legal Nexus**

10. While these two classes—Indigenous of America people and descendants of enslaved Africans—possess distinct histories, legal statuses, and remedies, both share standing under constitutional, statutory, and equitable grounds based on:

- Generations of involuntary servitude, displacement, and systemic erasure;

- Unjust enrichment by state and federal actors through the diversion of benefits meant for these groups;

- Continuing violations of equal protection, due process, and sovereign rights under the U.S. Constitution.

11. Plaintiffs bring these claims under 42 U.S.C. § 1983, the Declaratory Judgment Act, and federal equitable jurisdiction, seeking to:

- Enjoin further misappropriation of federal benefits;

- Restore the original legal meaning of the 14th Amendment;

- Reinstate the sovereign identity of the Indigenous of America people;

- Recognize a protected class status for descendants of enslaved Africans under constitutional and historical analysis.

12. The injuries described herein are ongoing, distinct, and capable of repetition yet evading review. The federal court retains authority to provide separate and tailored remedies within one complaint given the financial and procedural limitations of Plaintiffs who face systemic legal barriers.

13. Relief must be granted to address these dual harms with clarity, specificity, and constitutional fidelity. Failure to do so would compound centuries of denial and render justice unattainable for future generations.

## PART VI: LEGAL ANALYSIS OF BIRTHRIGHT CITIZENSHIP UNDER THE 14TH AMENDMENT

**Date:** February 14, 2025

**Re:** Analysis of the Fallacy of Birthright Citizenship Under the 14th Amendment

1. **Original Purpose of the 14th Amendment**

   The 14th Amendment was ratified in 1868 primarily to overturn *Dred Scott v. Sandford* (1857) and to secure U.S. citizenship for formerly enslaved persons and their descendants. The phrase "subject to the jurisdiction thereof" explicitly excluded groups such as children of foreign diplomats, members of sovereign Native American tribes, and other foreign nationals owing allegiance elsewhere. The Amendment's framers did not intend to confer automatic citizenship upon all persons born on U.S. soil indiscriminately.

2. **Judicial Misinterpretation: United States v. Wong Kim Ark (1898)**

   The Supreme Court's ruling in *Wong Kim Ark* extended citizenship rights to children

born in the U.S. to parents legally residing but not citizens. This precedent has since been expanded beyond the case's narrow facts, leading to the misapplication of birthright citizenship to children of undocumented immigrants—an extension never directly addressed by the Court. This broad reading conflicts with the Amendment's original intent and represents judicial overreach.

3. **Political Distortion and Consequences**

The broad interpretation has fueled political motivations such as demographic manipulation, electoral advantage, and policies enabling undocumented immigration, undermining the Amendment's foundational purpose: to secure rights for freed slaves and their progeny. This distortion betrays the Amendment's emancipatory aims and challenges national sovereignty.

4. **Legislative and Executive Attempts at Reaffirmation**

Congressional proposals (Birthright Citizenship Acts of 2015 and 2021) and executive orders by President Trump and Governor DeSantis have sought to clarify "jurisdiction" consistent with original intent, aiming to restrict birthright citizenship to lawful subjects. However, these efforts have faced strong judicial resistance, effectively cementing *Wong Kim Ark* as controlling precedent despite its flaws.

5. **Conclusion: The Need for Restoration**

To uphold constitutional fidelity, the judiciary and legislature must reassert the original context, clarify jurisdictional scope, and affirm citizenship protections strictly for descendants of enslaved Africans—restoring the 14th Amendment's promise without expanding it to unintended populations.

## PART VI-A: SOVEREIGNTY RESTORATION AND INHERENT RIGHTS OF INDIGENOUS OF AMERICA PEOPLE

**Date:** February 14, 2025

**Re:** Legal Framework and Remedies for the Sovereign Status of Indigenous of America People

1. **Inherent Sovereignty Preceding U.S. Jurisdiction**

   Indigenous of America peoples existed as sovereign nations before the creation of the United States. Their rights are inherent and predate any U.S. Constitution or statute. Unlike descendants of enslaved Africans, Indigenous citizenship and nationhood were never granted by Congress or the Constitution—they derive from natural law, customary international law, and their original territorial governance.

2. **Constitutional and Judicial Recognition**

   The U.S. Supreme Court has long recognized Indigenous tribes as "domestic dependent nations" (*Cherokee Nation v. Georgia*, 1831) with inherent self-government powers. Despite this, successive policies—Indian Removal Act, Dawes Act, forced assimilation, and termination policies—have unlawfully undermined their sovereignty without extinguishing it legally.

3. **Inapplicability of the Reconstruction Amendments**

   The 13th, 14th, and 15th Amendments were designed to emancipate and protect formerly enslaved African Americans. Indigenous peoples' political status and rights are independent of these Amendments and require distinct recognition and restoration.

4. **International Norms Supporting Sovereignty**

   Though not fully binding domestically, instruments like the United Nations Declaration on the Rights of Indigenous Peoples (UNDRIP) embody principles of Indigenous self-determination, cultural preservation, land restitution, and free, prior, and informed consent—guiding equitable remedial frameworks.

5. **Remedial Measures Sought**

- Full recognition and enforcement of Indigenous sovereignty and jurisdiction.

- Return or just compensation for unlawfully seized lands.

- Restoration of Indigenous governance free from state or local interference.

- Reparations for cultural genocide and economic marginalization.

- Establishment of truth and reconciliation processes.

6. **Separation from Birthright Citizenship Claims**

   While historically intertwined in suffering and systemic injustice, Indigenous sovereignty claims must be addressed independently from birthright citizenship issues affecting descendants of slaves, ensuring tailored remedies that respect their unique legal and political status.

## PART VII: ADDENDUMS SUPPORTING ARGUMENT FOR LEGAL, POLITICAL, AND ECONOMIC RESTORATION

### Addendum 1: Legal Barriers and Sovereignty Distinctions

- *Wong Kim Ark* remains a formidable obstacle to restoring the original 14th Amendment intent, with courts reluctant to revisit it.

- Indigenous peoples never required U.S. permission to be recognized as sovereign; their rights are inherent and separate from the Reconstruction Amendments.

- Historical laws like the Indian Removal Act and assimilation policies represent fraudulent extinguishment efforts, not lawful nullification of sovereignty.

### Addendum 2: Political Will and Ongoing Suppression

- Executive efforts to restrict birthright citizenship face judicial blockade; Indigenous communities similarly face obstruction in sovereignty and land claims.

21

- The marginalization of leaders like Mrs. Mary L. Hill exemplifies systemic suppression of Black and Indigenous agency in political and economic spheres.

## Addendum 3: Pattern of Federal and State Neglect

- Since the 1400s, federal and state governments have consistently failed to honor treaties or uphold protections for either Indigenous or African-descended peoples.

- Examples include the Indian Appropriations Acts, betrayal of Reconstruction-era promises, Jim Crow segregation, redlining, and land seizures in Indigenous territories.

- Supreme Court rulings recognizing rights have rarely been enforced at state or local levels.

## Addendum 4: Distinct Remedies Must Be Acknowledged

- Indigenous peoples seek recognition of sovereignty, land restoration, cultural protection, and reparations for forced assimilation.

- Descendants of enslaved Africans seek reparations and restoration tied to the 14th Amendment, protecting their exclusive birthright citizenship.

- Combining these claims is a strategic necessity due to economic limitations, but the Court must treat them as distinct with tailored remedies.

## PART VIII: CONCLUSION — A CALL FOR HISTORIC JUSTICE ............................... 21

For centuries, the **Indigenous peoples** of this land and the descendants of enslaved Africans have endured unimaginable suffering—dispossession, forced labor, systemic exclusion, and the erasure of identity, rights, and history. Their pain has been preserved not in textbooks or legal recognition, but in oral traditions, ancestral memories, and the enduring wounds of generational trauma.

This complaint is not merely a legal action. It is a moral appeal—a petition to this Honorable Court to interrupt the cycle of injustice that has persisted through colonization,

slavery, segregation, broken treaties, and discriminatory laws. The law must no longer serve as a tool of oppression, but as a vehicle of truth, reconciliation, and restoration.  The Plaintiffs do not seek pity, token gestures, or empty apologies. They demand justice—measured, lawful, historic justice that acknowledges the distinct identities and sovereign status of Indigenous nations and the constitutional guarantees owed to freedmen's descendants.

This includes the restoration of land, sovereignty, and self-determination for Indigenous peoples; and the affirmation of birthright citizenship and reparative justice for descendants of American slavery.

The path forward must be rooted in truth. Courts must no longer conflate distinct peoples and legal claims for the sake of procedural ease or political expediency. Separate harms require separate remedies. To combine them is to perpetuate the very erasure this filing seeks to redress.

The time has come for the judiciary to step into its highest role—as the protector of constitutional principles and the corrector of historical wrongs. The Court's decision will not only shape law but will shape history. It must rise to meet this moment.

Let this be the generation—and this be the Court—that finally tells the truth, administers justice, and begins the work of repair.

Let this be the decision that teaches our children that America is not just a nation of laws—but a nation of courage, honesty, and healing

## PART IX: STRONG CLOSING ARGUMENT FOR SEPARATE REMEDIES AND FINAL APPEAL TO THE COURT

## A CALL TO HISTORICALLY CORRECT, NOT CONFLATE

## A. HISTORICAL AND LEGAL FOUNDATIONS ESTABLISH DISTINCTNESS

This Honorable Court stands at a rare historical crossroads. It is being asked not to merely interpret the law, but to correct the enduring consequences of two of the greatest

injustices in American history: the theft and destruction of Indigenous nations, and the enslavement and constitutional erasure of African people and their descendants. These are not the same harm. These are not the same people. And they must not—*they cannot*—be assigned the same remedy.

**1. The Indigenous of America Peoples Hold Pre-Constitutional Sovereignty**

Long before the formation of the United States, Indigenous nations governed and stewarded these lands under laws, languages, spiritual systems, and diplomatic traditions that spanned centuries. Their sovereignty was never granted by the United States—it is inherent, predating the Republic. Yet U.S. policy has systematically dismantled Indigenous governance through broken treaties, forced removals, cultural genocide, and illegal land seizures.

The Supreme Court recognized in *Cherokee Nation v. Georgia* and *Worcester v. Georgia* that tribal nations are "distinct, independent political communities." That legal distinction has never been revoked—only dishonored. Justice demands the **full restoration of sovereignty, land, and legal recognition** on the terms of those who never surrendered their identity.

**2. The 14th Amendment Was a Specific Constitutional Response to Slavery**

Conversely, the descendants of enslaved Africans were denied humanity, citizenship, and lawful recognition under a Constitution that once protected slavery. The 14th Amendment was passed as a direct rebuke to *Dred Scott v. Sandford*, explicitly granting birthright citizenship to former slaves and their descendants. It was not a blank check for unrestricted citizenship. The clause "subject to the jurisdiction thereof" was meant to exclude both foreign diplomats and sovereign tribal members—proving that Indigenous people and freedmen were recognized as **legally distinct groups** even in the Constitution's own language.

Over time, judicial activism has distorted the 14th Amendment's original meaning. *United States v. Wong Kim Ark* opened the door to expansive interpretations that ignored the Amendment's original intent, turning a targeted shield for freed slaves into a one-size-fits-all immigration clause—thereby **diluting the specific remedy intended for the descendants of American chattel slavery**.

**3. Separate Harms Require Separate Legal Frameworks and Remedies**

The claim of the Indigenous of America peoples arises from **sovereignty, land treaties, international norms, and restoration of nationhood**. The claim of descendants of formerly enslaved persons arises from **constitutional betrayal, systemic discrimination, and the denial of promised legal protections and reparations**.

Combining these two distinct claims under a single remedy is legally incoherent and morally unacceptable. It dishonors both histories, whitewashes specific cultural traumas, and undermines the integrity of any relief granted. To merge them is to erase them again.

**B. HISTORICAL RECORD DEMANDS DISTINCT RECOGNITION**

**1. The Genocide of Indigenous Peoples Must Be Acknowledged on Its Own Terms**

The extermination of Indigenous nations through war, biological warfare, starvation policies, and forced assimilation was not a consequence of slavery—it was a **separate, intentional, and sustained genocide**, in violation of modern international law and U.S. treaty obligations. The erasure of languages, traditions, and governments continues today through forced gentrification, resource extraction, and denial of tribal jurisdiction. This requires not reparations alone—but **the full restoration of land and self-governance.**

**2. The Legacy of Slavery Is a Constitutional Betrayal Still Unrepaired**

Descendants of slaves built the economic foundation of the United States through unpaid labor. Even after the Civil War, their progress was sabotaged through the Black Codes, Jim Crow laws, redlining, mass incarceration, and voter suppression. Courts have narrowed, ignored, or reversed the original protections of the 14th and 15th Amendments. This injury is not a foreign policy issue—it is a **constitutional failure**. Its remedy must be federal, enforceable, and rooted in the **rights of full citizenship, economic redress, and political protection**.

## C. JUDICIAL EFFICIENCY DOES NOT JUSTIFY MORAL COLLAPSE

It is true that the Plaintiffs file this action jointly out of necessity, not confusion. Economic hardship and systemic gatekeeping have limited access to multiple filings. But this is no excuse for the Court to blend distinct harms into a single solution. This Honorable Court can, and must, exercise **judicial wisdom and moral clarity** by addressing these claims **together in docket only**, but **separately in remedy**.

In fact, judicial economy supports this. The factual records, legal arguments, and historical timelines are independently developed and well-documented. Granting separate relief in one case not only honors the law—it **creates precedent** for how this nation can reconcile complexity without compromise.

## D. FINAL APPEAL: LET THIS COURT RENDER A DECISION WORTHY OF HISTORY

The Plaintiffs urge this Court not to act as a mere adjudicator of claims, but as a custodian of national conscience. This case is not just about constitutional interpretation—it is about restoring humanity to people whom the law has dehumanized, generation after generation.

Let the Court declare that:

- Indigenous of America peoples are sovereign by origin, not by permission, and entitled to full restoration of land, authority, and nationhood.

- Descendants of former slaves are citizens by constitutional right, and entitled to federal protection, economic reparations, and restored dignity under the 14th Amendment.

- No judicial efficiency, no political expedience, no legislative inaction can justify merging these two sacred claims into one diluted judgment.

This Court's decision will echo beyond these walls. It will be studied by future generations as either the moment when justice stood tall and separate for two long-oppressed peoples—or as yet another chapter in the tragic erasure of truth through judicial convenience.

Let it be said that this Court chose courage.

Let it be recorded that justice—*real justice*—was not denied again.

## PART X. - APPENDICES

### Appendix A: Historical Timeline of Indigenous Sovereignty Violations

- Pre-1492: Indigenous nations sovereign over vast territories.

- 1830: Indian Removal Act and Trail of Tears forcibly relocate tribes.

- 1887: Dawes Act fragments tribal lands, promotes assimilation.

- 1950s-60s: Termination policies strip recognition and services.

- 1970s-present: Ongoing land claims and sovereignty restoration efforts.

### Appendix B: Historical Timeline of Freed Slave Descendants and Citizenship Struggles

- 1619-1865: Transatlantic slave trade and chattel slavery.

- 1865-1877: Reconstruction and ratification of the 13th, 14th, and 15th Amendments.

- Late 1800s-1960s: Jim Crow laws, disenfranchisement, and segregation.

- 1898: Wong Kim Ark decision judicially expands birthright citizenship.

- 20th-21st Century: Civil Rights Movement and ongoing struggles for reparations.

### Appendix C: Key Legal Precedents

- Cherokee Nation v. Georgia, 1831

- Worcester v. Georgia, 1832

- Dred Scott v. Sandford, 1857

- United States v. Wong Kim Ark, 1898

- Harper v. Virginia Board of Elections, 1966

- Monell v. Department of Social Services, 1978

**Appendix D: Supporting International Legal Norms**

- United Nations Declaration on the Rights of Indigenous Peoples (UNDRIP)

- United Nations Genocide Convention, Article II

- International Covenant on Civil and Political Rights (ICCPR)

## PART XI: PRAYER FOR RELIEF A DEMAND FOR SEPARATE BUT EQUAL JUSTICE — ROOTED IN HISTORY, LAW, AND TRUTH

**WHEREFORE**, the Plaintiffs—on behalf of the Indigenous of America peoples and the descendants of formerly enslaved African Americans—respectfully pray that this Honorable Court issue a judgment that does not merely resolve a complaint, but restores **historical truth, legal clarity, and national integrity.**

The Plaintiffs request that the Court GRANT the following relief, separate in application but equal in moral weight, and designed to remedy centuries of state-sanctioned erasure, economic subjugation, and constitutional betrayal:

## I. CLASS CERTIFICATION

Pursuant to Federal Rule of Civil Procedure 23, certify this action as a class action on behalf of:

- **Class A**: All **Indigenous of America peoples** and their nations who have suffered dispossession, cultural genocide, denial of sovereignty, and forced displacement;

- **Class B**: All **descendants of emancipated African slaves** born or residing in the United States who continue to endure the unredressed consequences of chattel slavery, Jim Crow apartheid, and 14th Amendment misinterpretation.

## II. DECLARATORY RELIEF: RESTORING SOVEREIGNTY AND CITIZENSHIP CLARITY

### a. For Indigenous Peoples

Declare that Indigenous of America peoples are sovereign nations with inherent rights to land, governance, and self-determination, rooted in natural law and treaty obligations—independent of the 13th, 14th, or 15th Amendments.

### b. For Descendants of Freedmen

Declare that the 14th Amendment's Citizenship Clause was intended exclusively to protect formerly enslaved African Americans and their descendants, and was never designed to confer automatic citizenship on the children of undocumented immigrants, foreign nationals, or sovereign tribal members outside the jurisdiction of U.S. law

## III. INJUNCTIVE RELIEF: HALTING CONTINUED ABUSES

Issue permanent injunctions to prohibit:

- **a. Unlawful Interpretation of the 14th Amendment**

  Bar federal, state, and local authorities from expanding the Citizenship Clause to include individuals not lawfully subject to U.S. jurisdiction at birth.

- **b. Land and Cultural Exploitation**

  Halt all current and future land seizures, displacement programs, cultural commodification, or gentrification projects targeting Indigenous and African-descended communities.

- **c. Federal Funds Misallocation**

  Prohibit the diversion of CDBG, HUD, Economic Opportunity Act, and similar federal grants intended for these communities to agencies, developers, or recipients lacking proper eligibility or cultural alignment.

- **d. Misadministration of Community Funds**

  Mandate **community-led governance** over all federal programs affecting Indigenous or African-descended peoples, including control of how funds are allocated, spent, and monitored.

## IV. RESTORATION AND REPARATIONS: TANGIBLE REDEMPTION

### a. Indigenous of America Peoples

- Restore land titles and tribal sovereignty where rightful claims exist.
- Reaffirm treaty protections, jurisdictional authority, and control over natural resources.

### b. Descendants of Enslaved Africans

- Order a one-time federal reparations award of **$30 trillion**, representing a calculated measure of unpaid labor, generational theft, racial terrorism, and institutionalized exclusion.

- Establish **annual reparations payments** of **$500 billion**, retroactive to 1868, to directly redress ongoing harm.

- Create Guaranteed Income Programs, Sovereign Economic Development Zones, Black-owned and Indigenous-owned Banking Initiatives, Educational Trusts, Housing Reparations, and Business Capital Access Programs tailored specifically for these harmed classes.

## V. RECOGNITION OF HISTORICAL LEADERSHIP AND CULTURAL PRESERVATION

- **a. Legacy Restoration**

  Reinstate the name, work, and legacy of **Mrs. Mary L. Hill** and other erased or undermined leaders who pioneered anti-poverty, economic empowerment, and civil rights programs—especially under the Economic Opportunity Acts of 1964–1978.

- **b. National Archival Memorialization**

  Establish a **permanent national museum, archive, and public scholarship program** dedicated to the history, contributions, and sacrifices of Indigenous peoples and descendants of enslaved Africans—funded and managed by their own communities.

## VI. TRUTH AND RECONCILIATION COMMISSION WITH ENFORCEMENT POWER

Create a **federally funded, independent Truth and Reconciliation Commission**, empowered to:

- Investigate historical atrocities and their current legal, economic, and public health consequences;

- Conduct public hearings, collect testimony, and ensure full transparency;

- Oversee and enforce the implementation of reparative action plans approved by this Court.

## VII. ACCOUNTABILITY IN GOVERNANCE AND FUND ADMINISTRATION

- **a. Bar non-citizens or ineligible individuals** from holding public offices that administer, allocate, or influence federal or local funding meant for Indigenous or African-descended communities.

- **b. Impose qualifications requiring documented cultural and ancestral ties** to the affected communities before individuals or organizations may direct such funding.

## VIII. AUDITS, COMPLIANCE, AND TRANSPARENCY

Order the **U.S. Government Accountability Office (GAO)** to perform comprehensive forensic audits of:

31

- All CDBG, HUD, and Economic Opportunity Act disbursements from **1970 to present**;

- Misallocation, political manipulation, or unauthorized use of funds intended for protected classes;

- Publicly report findings with a mandate for prosecution or civil penalties in cases of fraud, abuse, or racial diversion.

## XII. LEGAL COSTS AND FURTHER EQUITABLE RELIEF

Award all costs of litigation, including:

- Attorney's fees, expert witness expenses, filing costs, and service fees;

- Ongoing monitoring mechanisms to ensure compliance with judicial orders;

- Any additional relief this Court deems just and necessary to effectuate **true and lasting justice**, as envisioned by both the **spirit of the Constitution** and the **moral weight of history.**

Respectfully Submitted on July 7, 2025

Signature: _____
Rubin Young, Pro Se Plaintiff
14060 SW 258th Street
Homestead, FL 33032
786-847-9111
commtrus@yahoo.com


Signature: _____
Sybel W. Lee, Pro Se Plaintiff
602 NW 100th Street
Miami, FL 33150
305-607-8843
Winifredsl1944@gmail.com


Signature: _____
Keith Wilson, Pro Se Plaintiff
P.O. Box 1445
Miami, FL 33147

786-424-1364
keithkeith618@aol.com

Signature: *Willie A. Thomas*
Willie A. Thomas
3985 NW 176TH Street
Miami Gardens, FL 33055
305-450-7812
WillieThomas3985@comcast.net

## PART XIII. – CERTIFICATES

### CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the type-volume limitation set forth in

the Local Rules of the Southern District of Florida and Federal Rule of Civil Procedure 23. This

complaint contains 7,642 words, excluding the parts exempted by the Rules.

Respectfully Submitted on July 7, 2025.

Signature: _____
Rubin Young, Pro Se Plaintiff
14060 SW 258th Street
Homestead, FL 33032
786-847-9111
commtrus@yahoo.com

Signature: _____
Sybel W. Lee, Pro Se Plaintiff
602 NW 100th Street
Miami, FL 33150
305-607-8843
Winifredsl1944@gmail.com

Signature: _____
Keith Wilson, Pro Se Plaintiff
P.O. Box 1445
Miami, FL 33147
786-424-1364

P.O. Box 1445
Miami, FL 33147
786-424-1364
keithkeith618@aol.com

Signature: *Willie A. Thomas*
Willie A. Thomas
3985 NW 176TH Street
Miami Gardens, FL 33055
305-450-7812
WillieThomas3985@comcast.net

## CERTIFICATE OF INTERESTED PARTIES

Pursuant to Local Rule 7.1(a)(2)

The undersigned, pursuant to Local Rule 7.1(a)(2), hereby certifies that the following individuals, entities, and government officials are believed to have a direct financial, administrative, legal, political, or constitutional interest in the outcome of this case. Each named party, whether as defendant or agency representative, is hereby recognized as having a right to full equal protection under the law, access to due process, and an interest in the equitable administration of justice arising from the relief sought:

**Plaintiffs:**

- Rubin Young
- Sybel W. Lee
- Keith Wilson,
- Wille A. Thomas

**Defendants:**

- President Donald J. Trump (United States of America)
- HUD (Scott Turner)
- DOJ (Pam Bondi, Jody Hunt)
- State of Florida (Ron DeSantis, Ryan Uthmeier)
- Miami-Dade County (Daniella Levine Cava, Juan Fernandez-Barquin, Pedro J. Garcia)
- Board of County Commissioners and Dept. Heads

**Note:**

34

All listed parties are considered integral to the constitutional questions, statutory claims, and equitable remedies raised in this case. Each bears a potential or actual role in policy implementation, resource distribution, regulatory enforcement, and historical redress. All are entitled to equal protection and transparency as required under the U.S. Constitution, federal law, and international human rights norms.

Respectfully Submitted on July 7, 2025

Signature: _____

Rubin Young, Pro Se Plaintiff
14060 SW 258th Street
Homestead, FL 33032
786-847-9111
commtrus@yahoo.com


Signature: _____

Sybel W. Lee, Pro Se Plaintiff
602 NW 100th Street
Miami, FL 33150
305-607-8843
Winifredsl1944@gmail.com


Signature: _____

Keith Wilson, Pro Se Plaintiff
P.O. Box 1445
Miami, FL 33147
786-424-1364
keithkeith618@aol.com


Signature: *Willie A. Thomas*

Willie A. Thomas
3985 NW 176TH Street
Miami Gardens, FL 33055
305-450-7812
WillieThomas3985@comcast.net

35

## CERTIFICATE OF SERVICE

**I certify**, that a copy of this complaint has been served on all parties via [U.S. mail/fax/email] on July 7, 2025.

- President Donald J. Trump (United States of America)
- HUD (Scott Turner)
- DOJ (Pam Bondi, Jody Hunt)
- State of Florida (Ron DeSantis, Ryan Uthmeier)
- Miami-Dade County (Daniella Levine Cava, Juan Fernandez-Barquin, Pedro J. Garcia)
- Board of County Commissioners and Dept. Heads

Respectfully Submitted on July 7, 2025

Signature: _____
Rubin Young, Pro Se Plaintiff
14060 SW 258th Street
Homestead, FL 33032
786-847-9111
commtrus@yahoo.com


Signature: _____
Sybel W. Lee, Pro Se Plaintiff
602 NW 100th Street
Miami, FL 33150
305-607-8843
Winifredsl1944@gmail.com

Signature: _____
Keith Wilson, Pro Se Plaintiff
P.O. Box 1445
Miami, FL 33147
786-424-1364
keithkeith618@aol.com


Signature: *Willie A. Thomas*
Willie A. Thomas
3985 NW 176TH Street
Miami Gardens, FL 33055
305-450-7812
WillieThomas3985@comcast.net

36

## STATEMENT OF INTEGRITY

I, Rubin Young, Pro Se Plaintiff, hereby declare under penalty of perjury under the laws of the United States of America that the foregoing statements, arguments, and factual assertions contained in this Complaint and Memorandum of Law are true and correct to the best of my knowledge, information, and belief. This document is prepared with the utmost respect for the truth, legal standards, and historical accuracy.

No material fact has been knowingly omitted or misstated. This filing represents a sincere and good-faith effort to seek justice for the Indigenous of America peoples and descendants of enslaved Africans, to uphold constitutional principles, and to promote equitable remedies based on documented historical and legal grounds.

Respectfully submitted on this 7th day of July, 2025.

Signature: _____

Rubin Young /s/
Pro Se Plaintiffs, et. al.
14060 SW 258th Street
Homestead, FL 33032
786-847-9111
commtrus@yahoo.com

37