**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 25-CV-23025-ELFENBEIN

**RUBIN YOUNG**, *et al.*,

      Plaintiffs,

v.

**HON. DONALD J. TRUMP**,
*in his official capacity as President*
*of the United States*, *et al.*,

      Defendants.

_____/

## OMNIBUS ORDER

**THIS CAUSE** is before the Court[1] on twelve motions: (1) *pro se* Plaintiffs Rubin Young,
Sybel W. Lee, Keith Wilson, and Willie A. Thomas' Amended Motion for Constitutional Review,
Protection of Indigenous American Birthright, and Emergency Declaratory Relief ("Amended
Motion for Constitutional Review"), ECF No. [10]; (2) Plaintiffs' Motion for Class Certification
Pursuant to Fed. R. Civ. P. 23 ("Motion for Class Certification"), ECF No. [11]; (3) Plaintiffs'
Motion for Constitutional Review, Protection of Indigenous American Birthright, and Emergency
Declaratory Relief ("Motion for Constitutional Review"), ECF No. [14]; (4) Plaintiffs' Motion for
Historical Relief, Compensation, and Acknowledgement of Injustices ("Motion for Historical
Relief"), ECF No. [16]; (5) Defendant Daniella Levine Cava's Motion to Quash Service ("Motion
to Quash Service"), ECF No. [25]; (6) Plaintiffs' Motion to Compel Entry of Default and Strike
Motion to Quash ("Motion for Clerk's Default Against Levine Cava"), ECF No. [28]; (7)

---

[1] Pursuant to Administrative Order 2025-11, because this case includes as a party "a non-prisoner *pro se*"
litigant, the undersigned United States Magistrate Judge has been assigned as the presiding judge for all
purposes, including entering dispositive orders, presiding over any trial, and entering a final judgment.

Defendants DeSantis and Uthmeier's Motion to Set Aside Clerk's Default ("Motion to Set Aside Clerk's Default Against DeSantis and Uthmeier"), ECF No. [43]; (8) Plaintiffs' Motion to Dismiss Defendants' Motion to Set Aside Clerk's Default ("Motion to Preserve Clerk's Default Against DeSantis and Uthmeier"), ECF No. [47]; (9) Plaintiffs' Motion for Relief from Clerk's Error and to Consider Late Filing ("Motion to Excuse Late Filing"), ECF No. [49]; (10) Plaintiffs' Motion to Dismiss Defendant Levine Cava's Motion to Quash ("Motion to Preserve Service Against Levine Cava"), ECF No. [51]; (11) Plaintiffs' Request for Clerk's Entry of Default against Defendants Trump, Turner, and Bondi ("Motion for Clerk's Default Against Trump, Turner, and Bondi"), ECF No. [52]; and (12) Plaintiffs' Motion for Clerk's Entry of Default and Default Judgment against Defendants Trump, Bondi, and Turner ("Motion for Default Judgment Against Trump, Turner, and Bondi"), ECF No. [53]. For the reasons explained below, **ECF Nos. [25], [43], and [52]** are **GRANTED**; **ECF Nos. [10], [11], [14], [16], and [53]** are **DENIED WITHOUT PREJUDICE**; and **ECF Nos. [28], [47], [49], and [51]** are **DENIED**.

## I.      BACKGROUND

On July 7, 2025, *pro se* Plaintiffs Rubin Young, Sybel W. Lee, Keith Wilson, and Willie A. Thomas filed a Verified Complaint for Declaratory, Injunctive, and Monetary Relief against, in their official capacities only, Defendants President Donald J. Trump, United States Attorney General Pam Bondi, Secretary of Housing and Urban Development Scott Turner, Florida Governor Ron DeSantis, Florida Attorney General Ryan Uthmeier, and Mayor of Miami-Dade County Daniella Levine Cava.[2] *See* ECF No. [1]. Although the Complaint does not follow the traditional

---

[2] The Complaint also lists in its allegations as Defendants the United States of America, Miami-Dade County, and "Neighborhood Revitalization Strategy Areas (NRSAs)," *see* ECF No. [1] at 7–8, and lists in its Certificate of Interested Parties as Defendants "HUD," "DOJ," "State of Florida," "Board of County Commissioners and Dept. Heads," Jody Hunt, Juan Fernandez-Barquin, and Pedro J. Garcia, *see* ECF No. [1] at 34. Those entities, however, are not listed in the case caption, so the Court does not recognize them as Defendants in this case.

format of numbered factual allegations followed by clearly enumerated causes of action — indeed, in format and content it is more like an outline for an academic paper than a complaint, *see generally* ECF No. [1] — it appears to bring two claims, *see* ECF No. [1] at 15–17.

First, Plaintiffs allege the "Indigenous of America people" are "sovereign" because "their sovereign identity predates and exists independently of the United States Constitution" and that the "federal government's failure to recognize these people as sovereign" has "violated the Guarantee Clause of Article IV, Section 4 of the U.S. Constitution." *See* ECF No. [1] at 15–16. Second, Plaintiffs allege "14th Amendment birthright citizenship" has been improperly expanded to "children born to undocumented immigrants," which "dilutes the protection meant specifically for descendants of enslaved Africans." *See* ECF No. [1] at 16–17. For that reason, Plaintiffs "seek declaratory relief stating that the 14th Amendment's protections do not extend to individuals who were not themselves subject to U.S. jurisdiction at the time of their birth, and that the historical beneficiaries of the amendment—descendants of U.S.-emancipated slaves—are entitled to reparative protections." *See* ECF No. [1] at 17. Plaintiffs assert that both claims are brought "under 42 U.S.C. § 1983, the Declaratory Judgment Act, and federal equitable jurisdiction." *See* ECF No. [1] at 17.

In the three months since filing the Complaint, Plaintiffs have filed thirty-one additional filings, which can largely be grouped into two categories. The first category consists of filings that pertain to the validity of service of process on and clerk's default against various Defendants. Eight of the motions at issue here fall into this first category: the Motion to Quash Service, ECF No. [25];[3] the Motion for Clerk's Default Against Levine Cava, ECF No. [28]; the Motion to Set Aside Clerk's Default Against DeSantis and Uthmeier, ECF No. [43];[4] the Motion to Preserve

---

[3] Plaintiffs did not file this motion, ECF No. [25]; Levine Cava filed it.
[4] Plaintiffs did not file this motion, ECF No. [43]; Defendants DeSantis and Uthmeier filed this one.

Clerk's Default Against DeSantis and Uthmeier, ECF No. [47]; the Motion to Excuse Late Filing, ECF No. [49]; the Motion to Preserve Service Against Levine Cava, ECF No. [51]; (11) the Motion for Clerk's Default Against Trump, Turner, and Bondi, ECF No. [52]; and the Motion for Default Judgment Against Trump, Turner, and Bondi, ECF No. [53].  Broadly, these motions seek rulings on whether particular Defendants were properly served such that the entry of clerk's default under Federal Rule of Civil Procedure 55(a) is appropriate against that Defendant or those Defendants.

The second category consists of filings that pertain to the substance and classification of Plaintiffs' claims.  Four of the motions at issue here fall into the second category: the Amended Motion for Constitutional Review, ECF No. [10]; the Motion for Class Certification, ECF No. [11]; the Motion for Constitutional Review, ECF No. [14]; and the Motion for Historical Relief, ECF No. [16].  Broadly, these motions seek rulings on the merits of Plaintiffs' claims and on whether Plaintiffs can bring those claims as representatives for a class. All twelve motions are ripe for review, but for ease of understanding, the Court describes the details of each motion, as necessary or appropriate, in its Discussion section below.

## II.   LEGAL STANDARDS

### A.  Service of Process

"[A]n individual or entity 'is not obliged to engage in litigation unless officially notified of the action under a court's authority, by formal process.'"  *Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 925 (11th Cir. 2003) (alterations adopted) (quoting *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999)).  "By definition, 'service of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served.'"  *Id.* at 921 (quoting *Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 444–45 (1946)); *see also Pardazi v. Cullman Med.*

*Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990) ("Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served."); *Banco Latino, S.A.C.A. v. Gomez Lopez*, 53 F. Supp. 2d 1273, 1277 (S.D. Fla. 1999). Federal Rule of Civil Procedure 4 governs service of process in federal court. *See* Fed. R. Civ. P. 4.

Relevant here, Rule 4 requires a plaintiff to serve defendants within 90 days after filing a complaint. *See* Fed. R. Civ. P. 4(m). "To serve a United States . . . employee sued only in an official capacity," which applies to Defendants Trump, Bondi, and Turner, "a party must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the . . . employee." *See* Fed. R. Civ. P. 4(i)(2); ECF No. [1] at 1. "To serve the United States, a party must" do three things: (1) either "deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought—or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk—or send a copy of each by registered or certified mail to" the "civil-process clerk at the United States attorney's office"; (2) "send a copy of each by registered or certified mail to the Attorney General of the United States"; and (3) "if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer." *See* Fed. R. Civ. P. 4(i)(1).

"Rule 4 is silent . . . as to the proper method of service on a state officer sued in his official capacity." *Hudson v. Morris*, No. 20-CV-120, 2021 WL 2188571, at *2 (S.D. Ga. May 28, 2021). And "[c]ourts disagree on whether service of process in official-capacity suits" against State officials, which applies to Defendants DeSantis and Uthmeier, "is governed by Rule 4(j)(2), which governs service upon the state, or Rule 4(e), which governs service upon an individual." *See Felton v. Winter Park Police Dep't*, No. 22-CV-898-RBD-DAB, 2022 WL 8216907, at *3 n.3

(M.D. Fla. Aug. 2, 2022), *R. & R. adopted*, No. 22-CV-898-RBD-DAB, 2022 WL 4396375 (M.D. Fla. Sept. 23, 2022). Indeed, "there appears to be no consensus among the circuits," and "district courts within the Eleventh Circuit appear split on the issue." *See Streeter v. Dep't of Pub. Safety*, 689 F. Supp. 3d 1312, 1336 (S.D. Ga. 2023). Unsurprisingly, there is no "Eleventh Circuit precedent addressing the issue of proper service on a state official sued only in his official capacity." *Id.* As the Eleventh Circuit has itself recently noted, it has "not directly addressed whether" a "state official sued in an official capacity for prospective relief should be served under Rule 4(e) or (j)." *Muhammad v. Jones*, No. 22-12563, 2023 WL 5499969, at *6 (11th Cir. Aug. 25, 2023).

Under Rule 4(e), a plaintiff may serve an individual in two ways. *See* Fed. R. Civ. P. 4(e). First, the plaintiff can follow "state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." *See* Fed. R. Civ. P. 4(e)(1). In Florida, "[s]ervice of original process is made by delivering a copy of it to the person to be served with a copy of the complaint, petition, or other initial pleading or paper or by leaving the copies at his or her usual place of abode with any person residing therein who is 15 years of age or older and informing the person of their contents."[5] Fla. Stat. § 48.031(1)(a); *see also* Fla. R. Civ. P. 1.070(e) (noting that "[a]t the time of personal service of process, a copy of the initial pleading must be delivered to the party on whom service is made"). Second, the plaintiff can do "any of the following": deliver "a copy of the summons and of the complaint to the individual personally," leave "a copy of each at the individual's dwelling or usual place of

---

[5] Alternatively, a "defendant may accept service of process by mail" under certain circumstances, which include the plaintiff using certified mail to notify "any defendant of the commencement of the action and" request "that the defendant waive service of a summons." *See* Fla. R. Civ. P. 1.070(i). Rule 4 also permits service by mail if an individual who would otherwise have to be served as explained in Rule 4(e) agrees to waive service. *See* Fed. R. Civ. P. 4(d).

abode with someone of suitable age and discretion who resides there," or deliver "a copy of each to an agent authorized by appointment or by law to receive service of process."  *See* Fed. R. Civ. P. 4(e)(2). "[C]ertified mail . . . does not satisfy Rule 4's service requirements." *Thorpe v. Dumas*, 788 F. App'x 644, 648 (11th Cir. 2019); *see also Dixon v. Blanc*, 796 F. App'x 684, 688 (11th Cir. 2020) (noting that the "mailing of the complaint and summons does not constitute 'delivering' the complaint . . . within the meaning of Rule 4(e)(2)(A) or (C)"); *Morris v. City of Orlando*, No. 10-CV-233-ORL, 2010 WL 2836623, at *2 (M.D. Fla. July 19, 2010) ("Although Section 48.111 is silent as to the appropriate methods of service, service by certified mail does not constitute 'delivery' as generally required for service under Florida law." (footnote omitted)); *Paredes v. Cochran*, 666 So. 2d 991, 992 (Fla. 4th DCA 1996); *Hicks v. City of Hialeah*, 647 So. 2d 984, 985–86 (Fla. 3d DCA 1994).

Under Rule 4(j), a plaintiff may also serve a state "that is subject to suit" in two ways.  *See* Fed. R. Civ. P. 4(j)(2).  First, the plaintiff can deliver "a copy of the summons and of the complaint to" the "chief executive officer" of the State.  *See* Fed. R. Civ. P. 4(j)(2)(A).  "Under Florida law, Florida's chief executive officer is the governor." *Rembert v. Att'y Gen., Fla.*, No. 20-14573, 2021 WL 6101488, at *1 (11th Cir. Dec. 22, 2021); *see also* Fla. Const. art. IV, § 1(a) ("The supreme executive power shall be vested in a governor.").  Second, the plaintiff can serve "a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." *See* Fed. R. Civ. P. 4(j)(2)(B).  In Florida, "[w]hen the state has consented to be sued, process against the state shall be served on the state attorney or an assistant state attorney for the judicial circuit within which the action is brought and by sending two copies of the process by registered or certified mail to the Attorney General."  Fla. Stat. § 48.121.

Finally, Rule 4 is also silent as to the proper method of service on a local government

officer sued in her official capacity, which applies to Defendant Levine Cava. *See generally* Fed. R. Civ. P. 4. But because local government officers hold roles similar to their state counterparts, and because "municipal corporation[s], or any other state-created governmental organization[s]" are included in Rule 4(j)(2), it is likely the same service principles apply to local government officers sued in their official capacities as apply to state officers sued in their official capacities. Through that lens, a plaintiff can serve local government officers under Rule 4(e) in the same way described above.

Similarly, a plaintiff can serve local government officers under Rule 4(j) in two ways: by delivering a copy of the summons and complaint to the local government entity's chief executive officer, *see* Fed. R. Civ. P. 4(j)(2)(A), or by delivering a copy of each as prescribed by Florida law, *see* Fed. R. Civ. P. 4(j)(2)(B). In Miami-Dade County, the chief executive officer is the mayor. *See* Miami-Dade Cnty. Home Rule Amend. & Charter § 2.02 ("The Mayor shall serve as head of the county government" and "shall be responsible for the management of all administrative departments of the County government and for carrying out policies adopted by the" Board of County Commissioners."), https://www.miamidade.gov/charter/library/home-rule-charter.pdf. And under Florida law, a plaintiff can serve "any county which has a governing board" in two ways. *See* Fla. Stat. § 48.111(1); Miami-Dade Cnty. Home Rule Amend. & Charter § 1.01 ("The Board of County Commissioners shall be the legislative and the governing body of the county."). First, the plaintiff can serve the county's "registered agent." *See* Fla. Stat. § 48.111(1)(a). Second, if the County "does not have a registered agent, or if the registered agent cannot otherwise be served after one good faith attempt," the plaintiff can serve one of the following people, in this precise order: the County's "president, mayor, chair, or other head"; its "vice president, vice mayor, or vice chair"; "any member of the governing board," the County's manager, or "an in-

house attorney for the" County; or "any employee of" the County "at the main office of the" County.  *See* Fla. Stat. § 48.111(1)(b).

Rule 4 "is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint."  *Sanderford v. Prudential Ins. Co. of Am.*, 902 F.2d 897, 900 (11th Cir. 1990); *see also Banco Latino*, 53 F. Supp. 2d at 1281.  But service of process that is not in "substantial compliance" with the requirements of the Federal Rules is ineffective to confer personal jurisdiction over the defendant, even when a defendant has actual notice of the filing of the suit.  *See Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) ("A defendant's actual notice is not sufficient to cure defectively executed service."); *Prewitt*, 353 F.3d at 925 & n.14. Regardless of how a plaintiff attempts service, if "a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  *See* Fed. R. Civ. P. 4(m).

## B.  Entry of Clerk's Default and Default Judgment

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55 (a).  Before the Clerk can enter default, however, the defendant over whom the plaintiff requests default must have been properly served.  *See Harris v. Charlie Norwood Dep't of Veteran Affs. Med. Ctr.*, No. 24-CV-200, 2025 WL 509448, at *1 (S.D. Ga. Feb. 14, 2025); *Mancha v. Santiva Chron. Media, LLC*, No. 21-CV-388-SPC-NPM, 2021 WL 3849745, at *1 (M.D. Fla. Aug. 27, 2021); 10A Wright & Miller, Fed. Prac. & Proc. Civ. § 2682 (4th ed. 2020).  "[W]hen service of process is challenged, the party on whose behalf service is made has the burden of establishing its validity."  *Familia De Boom v. Arosa Mercantil, S.A.*, 629 F.2d 1134,

1139 (5th Cir. 1980), *abrogated on other grounds by Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982); *see also Polski Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 972 (11th Cir. 1986) ("A plaintiff has the burden of sustaining validity of service to invoke long-arm jurisdiction in the Florida courts."); *Aguila v. RQM+ LLC*, No. 23-CV-24702, 2025 WL 2322438, at *7 (S.D. Fla. Aug. 12, 2025).

If the clerk enters a default, the party seeking default then "must apply to the court for a default judgment." Fed. R. Civ. P. 55 (b)(1); *see also Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244 (11th Cir. 2015) ("When a defendant has failed to plead or defend, a district court may enter judgment by default."). "While a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law. Entry of default judgment is only warranted when there is a sufficient basis in the pleadings for the judgment entered." *Surtain*, 789 F.3d at 1245 (cleaned up). The Eleventh Circuit has "interpreted the standard" for evaluating whether a sufficient basis for default judgment exists "as being akin to that necessary to survive a motion to dismiss for failure to state a claim." *Surtain*, 789 F.3d at 1245; *see also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim."). Of course, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "This plausibility standard is met 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Surtain*, 789 F.3d at 1245 (quoting *Iqbal*, 556 U.S. at 678).

Similarly, a "default judgment may be entered against the United States, its officers, or its

agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court." Fed. R. Civ. P. 55(d). That is because Congress has recognized taxpayers "should be protected from unfounded claims which would be granted solely because of government's delay in responding. *See Compania Interamericana Exp.-Imp., S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996). Courts in this Circuit have not hesitated to reject requests for a default judgment based on Rule 55(d) when, as pleaded, a plaintiff's "complaint does not satisfy the court of" his "claim or right to relief." *See, e.g.*, *Johnson v. Astrue*, No. 07-CV-1614-T-30EAJ, 2008 WL 435180, at *4 (M.D. Fla. Feb. 14, 2008); *Rumph v. Astrue*, No. 09-CV-14290, 2010 WL 114965, at *1 (S.D. Fla. Jan. 12, 2010) (setting aside default "upon its own motion so that the case may proceed to a decision on its merits more expeditiously"); *Rives v. Lahood*, No. 11-CV-1940-RLV-JFK, 2011 WL 13157115, at *2 (N.D. Ga. Sept. 27, 2011), *R. & R. adopted*, No. 11-CV-1940-RLV, 2011 WL 13157351 (N.D. Ga. Oct. 27, 2011).

## C. Requirements to Vacate Clerk's Default

A court "may set aside an entry of [clerk's] default for good cause." Fed. R. Civ. P. 55(c). The good cause standard used in setting aside a clerk's entry of default is less stringent than the required showing to set aside a default judgment. *See E.E.O.C. v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990); Fed. R. Civ. P. 60(b). As the Eleventh Circuit has explained:

> Good cause is a mutable standard, varying from situation to situation. It is also a liberal one—but not so elastic as to be devoid of substance. We recognize that good cause is not susceptible to a precise formula, but some general guidelines are commonly applied. Courts have considered whether the default was culpable or willful, whether setting it aside would prejudice the adversary, and whether the defaulting party presents a meritorious defense. We note, however, that these factors are not talismanic, and that courts have examined other factors including whether the public interest was implicated, whether there was significant financial loss to the defaulting party, and whether the defaulting party acted promptly to correct the default. Whatever factors are employed, the imperative is that they be regarded simply as a means of identifying circumstances which warrant the finding of 'good cause' to set aside a default. However, if a party willfully defaults by

11

displaying either an intentional or reckless disregard for the judicial proceedings, the court need make no other findings in denying relief.

*Compania Interamericana*, 88 F.3d at 951–52 (quotation marks and citations omitted).

Because "there is a strong policy of determining cases on their merits," courts in this Circuit "view defaults with disfavor." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003); *see also Surtain*, 789 F.3d at 1244–45 ("Because of our strong policy of determining cases on their merits, however, default judgments are generally disfavored." (quotation marks omitted)); *Varnes v. Loc. 91, Glass Bottle Blowers Ass'n of U.S. & Can.*, 674 F.2d 1365, 1369–70 (11th Cir. 1982) (noting that "default judgments are disfavored" and that "the federal rules favor a decision on the merits" and "[c]ourts prefer adjudication on the merits"). "For that reason, any doubts regarding whether to set aside an entry of default should be resolved in favor of the party seeking relief." *Insituform Techs., Inc. v. AMerik Supplies, Inc.*, 588 F. Supp. 2d 1349, 1352 (N.D. Ga. 2008); *see also Davis v. Parkhill–Goodloe Co.*, 302 F.2d 489, 495 (5th Cir. 1962) ("[A]ny doubt should, as a general proposition, be resolved in favor of the movant to the end of securing a trial upon the merits." (quotation marks omitted)); *Chunara v. SOL Glob. Invs. Corp.*, No. 22-CV-22167, 2023 WL 3171995, at *3 (S.D. Fla. Apr. 3, 2023) (same). A defendant need only make "a bare minimum showing to support relief under Rule 55(c)." *See Jones v. Harrell*, 858 F.2d 667, 668–69 (11th Cir. 1988) (explaining that a district court did not abuse its discretion by setting aside a clerk's default when a defendant "had made a bare minimum showing to support relief under Rule 55(c)").

## III.    DISCUSSION

As noted above, the twelve motions ripe for review are best grouped into two categories: those dealing with service of process issues and those dealing with the substance/classification of Plaintiffs' claims. The Court begins with the service of process issues.

### A. Service of Process Motions

Eight of the motions at issue here raise service of process issues: the Motion to Quash Service, ECF No. [25]; the Motion for Clerk's Default Against Levine Cava, ECF No. [28]; the Motion to Set Aside Clerk's Default Against DeSantis and Uthmeier, ECF No. [43]; the Motion to Preserve Clerk's Default Against DeSantis and Uthmeier, ECF No. [47]; the Motion to Excuse Late Filing, ECF No. [49]; the Motion to Preserve Service Against Levine Cava, ECF No. [51]; (11) the Motion for Clerk's Default Against Trump, Turner, and Bondi, ECF No. [52]; and the Motion for Default Judgment Against Trump, Turner, and Bondi, ECF No. [53]. Each of these motions seeks a ruling on whether certain Defendants were properly served and, if so, whether entry of clerk's default is appropriate.

As an initial matter, the Court notes that some of these motions, though framed as independent filings, are actually responses to other motions. For example, the Motion for Clerk's Default Against Levine Cava, ECF No. [28]; the Motion to Excuse Late Filing, ECF No. [49]; and the Motion to Preserve Service Against Levine Cava, ECF No. [51], are all responses to the Motion to Quash Service, ECF No. [25]. Similarly, the Motion to Preserve Clerk's Default Against DeSantis and Uthmeier, ECF No. [47], is a response to the Motion to Set Aside Clerk's Default Against DeSantis and Uthmeier, ECF No. [43]. Finally, while neither the Motion for Clerk's Default Against Trump, Turner, and Bondi, ECF No. [52], nor the Motion for Default Judgment Against Trump, Turner, and Bondi, ECF No. [53], is a response to the other, both motions deal with the same subject matter, namely whether default is appropriate against Trump, Turner, and Bondi. For that reason, the Court will evaluate these motions in the groups indicated.

### 1. Service/Clerk's Default Against Levine Cava, ECF Nos. [25], [28], [49] & [51]

In the Motion to Quash, Levine Cava contends that, "[o]n its face, Plaintiffs' return of

service demonstrates that service upon Mayor Levine Cava was insufficient because it was attempted by mail, which does not comport with" the requirements of Rule 4. *See* ECF No. [25] at 1. Levine Cava argues that Rule 4(e) requires Plaintiffs to serve her personally because service by mail is an option only if a defendant agrees to waive personal service pursuant to Florida law. *See* ECF No. [25] at 2–5; *cf.* Fed. R. Civ. P. 4(d) (allowing for waiver of service). Because "Plaintiffs do not claim, and there is nothing in the record to suggest, that Mayor Levine Cava ever consented to accept service by mail or otherwise waived service," Plaintiffs' purported service of process on her must be quashed. *See* ECF No. [25] at 3–4. Without having been properly served, the Court does not have personal jurisdiction over her and entry of Clerk's default is inappropriate. *See* ECF No. [25] at 4.

Through the Motion for Clerk's Default Against Levine Cava, the Motion to Excuse Late Filing, and the Motion to Preserve Service Against Levine Cava, Plaintiffs respond that they served Levine Cava by "certified mail, priority mail," "return receipt," and "Duly Executed Affidavits of Service," which they argue are all "forms of service explicitly permitted under applicable rules."[6] *See* ECF No. [28] at 2, 5; ECF No. [51] at 2. As for what rules are applicable here, Plaintiffs point to Rule 4(c), Rule 4(e), and Fla. Stat. § 48.031. *See* ECF No. [28] at 2, 5. Plaintiffs also argue Levine Cava has made a "knowing misrepresentation of facts" by arguing they served her by "regular mail" and that her Motion to Quash is nothing more than a bad faith delay tactic. *See* ECF No. [28] at 6. Finally, Plaintiffs assert that, on September 4, 2025, the Clerk's Office "refused to accept" their "Request for Clerk Entry of Default and Motion for Default Judgment" against

---

[6] As noted in a separate order, only Plaintiff Young signed these motions despite them being filed on behalf of all four Plaintiffs. *See* ECF No. [54] at 2–3. After the Court made clear that all future filings must be signed by all Plaintiffs or they would be stricken, *see* ECF No. [54] at 5, Plaintiffs filed affidavits signed by all four of them indicating they have reviewed, consent to, and adopt "all factual statements, legal arguments, and requests for relief contained in" the filing at ECF No. [51], *see* ECF No. [59].

Levine Cava, which they sent by "certified and priority mail." *See* ECF No. [49] at 1. According to Plaintiffs, this "ministerial error" allowed Levine Cava to file the Motion to Quash on September 8, 2025, which they argue "would not have been possible if the Clerk had accepted" their September 4 filing "timely." *See* ECF No. [49] at 1.

As explained above, which portion of Rule 4 applies to a local government officer sued in her official capacity, as Mayor Levine Cava is here, is an unsettled issue of law. Despite the lack of a precise answer, however, courts agree that there are only two possible options: Rule 4(e), which governs service on individuals, and Rule 4(j)(2), which governs service on State or local governmental entities. *See, e.g.*, *Muhammad*, 2023 WL 5499969, at *6; *Streeter*, 689 F. Supp. 3d at 1336; *Felton*, 2022 WL 8216907, at *3 n.3; *Hudson*, 2021 WL 2188571, at *2. For that reason, Plaintiffs' reference to Rule 4(c) is unhelpful. As for whether the Court should measure the sufficiency of service against the requirements of Rule 4(e) or Rule (j)(2), the Court concludes that it does not have to decide the issue to resolve the Motion to Quash, Motion for Clerk's Default Against Levine Cava, Motion to Excuse Late Filing, and Motion to Preserve Service Against Levine Cava. This is because Plaintiffs have failed to follow the procedure of either Rule, so their attempts at serving Levine Cava were ineffective under both.

Looking first to the requirements for service under Rule 4(e), Plaintiffs had two avenues for compliance: (1) follow Florida law by delivering a summons and the complaint directly to Levine Cava herself or by leaving them at Levine Cava's "usual place of abode with any person residing therein who is 15 years of age or older and informing the person of their contents," *see* Fed. R. Civ. P. 4(e)(1); Fla. Stat. § 48.031(1)(a); Fla. R. Civ. P. 1.070(e); or (2) follow federal law by delivering a summons and the complaint to Levine Cava "personally," by leaving them at Levine Cava's "dwelling or usual place of abode with someone of suitable age and discretion who

resides there," or by delivering them "to an agent authorized by appointment or by law to receive service of process" for Levine Cava. *See* Fed. R. Civ. P. 4(e)(2).  As is clear from the face of those options, all of them require that service be made directly to a person — either Levine Cava herself, someone who resides with her and is old enough to accept service, or her authorized agent.  None of these options recognizes mail as an adequate method to effectuate service.[7]  For that reason, regardless of whether Plaintiffs used regular mail, priority mail, or certified mail, they did not satisfy the dictates of Rule 4(e).  *See Thorpe*, 788 F. App'x at 648; *Dixon*, 796 F. App'x at 688.

Moving to the requirements for service under Rule 4(j)(2), Plaintiffs again had two avenues for compliance: (1) follow federal law by delivering a summons and the complaint to Miami-Dade County's chief executive officer, who, conveniently, is the mayor, *see* Fed. R. Civ. P. 4(j)(2)(A); Miami-Dade Cnty. Home Rule Amend. & Charter § 2.02; or (2) follow Florida law by serving (in this precise order) Miami-Dade County's registered agent; its president, mayor, chair, or other head; its vice president, vice mayor, or vice chair; any member of its governing board, its manager, or an in-house attorney for the County; or any employee of the County at its main office, *see* Fed. R. Civ. P. 4(j)(2)(B); Fla. Stat. § 48.111(1); Miami-Dade Cnty. Home Rule Amend. & Charter § 1.01.  While not clear from the face of these options, case law has interpreted all of them to require that service be made directly to a person unless the defendant has agreed to waive personal service, which has not occurred here.  *See Morris*, 2010 WL 2836623, at *2; *Paredes*, 666 So. 2d at 992; *Hicks*, 647 So. 2d at 985–86.  So Plaintiffs' service by mail also failed to satisfy the dictates of Rule 4(j)(2).

As a result, the Court finds that Plaintiffs' attempts at service on Levine Cava were ineffective under either Rule 4(e) or Rule 4(j)(2) and that service on Levine Cava must be quashed.

---

[7] As noted above, Florida and federal law recognize service by mail only if a defendant has waived personal service, *see* Fla. R. Civ. P. 1.070(i); Fed. R. Civ. P. 4(d), which has not happened here.

Accordingly, the Motion to Quash, **ECF No. [25]**, is **GRANTED**.  For the same reasons, the Motion to Excuse Late Filing, **ECF No. [49]**, and Motion to Preserve Service Against Levine Cava, **ECF No. [51]**, are **DENIED**.  Finally, because effective service is a prerequisite to the entry of clerk's default, *see Harris*, 2025 WL 509448, at *1; *Mancha*, 2021 WL 3849745, at *1, the Motion for Clerk's Default Against Levine Cava, **ECF No. [28]**, is **DENIED**.

### 2.  Service/Clerk's Default Against DeSantis and Uthmeier, ECF Nos. [43] & [47]

In the Motion to Set Aside Clerk's Default Against DeSantis and Uthmeier, those Defendants contend the clerk's default entered against them "are due to be set aside as Plaintiffs failed to properly serve" them.  *See* ECF No. [43] at 1.  DeSantis and Uthmeier argue that, "[o]n their face, Plaintiffs' returns of service demonstrate that service on" them "was insufficient because it was attempted by certified mail which does not comply with Federal Rule of Civil Procedure 4."  *See* ECF No. [43] at 1.  Plaintiffs, through the Motion to Preserve Clerk's Default Against DeSantis and Uthmeier, respond that "[u]nder Florida Statute § 48.031, service of process was properly executed."[8]  *See* ECF No. [47] at 2.  The Court agrees with DeSantis and Uthmeier.

Again, which portion of Rule 4 applies to a State government officer sued in his official capacity, as Governor DeSantis and Florida Attorney General Uthmeier are here, is an unsettled issue of law.  But as already explained, courts agree that the two possible options are Rule 4(e) and Rule 4(j)(2).  And as with service on Levine Cava, the Court does not have to decide which of those two Rules is the better fit because Plaintiffs have failed to follow the procedure of either Rule, so their attempts at serving DeSantis and Uthmeier were ineffective under both.

Starting again with Rule 4(e), Plaintiffs had two avenues for compliance: (1) follow Florida

---

[8] Only Plaintiff Young signed these motions, but Plaintiffs filed affidavits signed by all four of them indicating they have reviewed, consent to, and adopt "all factual statements, legal arguments, and requests for relief contained in" the filing at ECF No. [47].  *See* ECF No. [58].

law by delivering a summons and the complaint directly to DeSantis and Uthmeier themselves or by leaving them at DeSantis' and Uthmeier's usual places of abode with any person residing therein who is 15 years of age or older and informing the person of their contents, *see* Fed. R. Civ. P. 4(e)(1); Fla. Stat. § 48.031(1)(a); Fla. R. Civ. P. 1.070(e); or (2) follow federal law by delivering a summons and the complaint to DeSantis and Uthmeier personally, by leaving them at DeSantis' and Uthmeier's dwellings or usual places of abode with someone of suitable age and discretion who resides there, or by delivering them to agents authorized by appointment or by law to receive service of process for DeSantis and Uthmeier. *See* Fed. R. Civ. P. 4(e)(2). Each of those options requires that service be made directly to a person — either to DeSantis and Uthmeier themselves, to someone who resides with them and is old enough to accept service, or to their authorized agents. None of these options recognizes mail as an adequate method to effectuate service in the absence of a waiver, so Plaintiffs' service by mail did not satisfy the dictates of Rule 4(e). *See Thorpe*, 788 F. App'x at 648; *Dixon*, 796 F. App'x at 688.

Moving to Rule 4(j)(2), Plaintiffs again had two avenues for compliance: (1) follow federal law by delivering a summons and the complaint to Florida's chief executive officer, who, conveniently, is the Governor, *see* Fed. R. Civ. P. 4(j)(2)(A); *Rembert*, 2021 WL 6101488, at *1; Fla. Const. art. IV, § 1(a); or (2) follow Florida law by serving "the state attorney or an assistant state attorney for the judicial circuit within which the action is brought and by sending two copies of the process by registered or certified mail to the Attorney General," *see* Fed. R. Civ. P. 4(j)(2)(B); Fla. Stat. § 48.121. Because Plaintiffs served DeSantis and Uthmeier by mail and not personally, they did not meet the requirements of option one. *See Morris*, 2010 WL 2836623, at *2; *Paredes*, 666 So. 2d at 992; *Hicks*, 647 So. 2d at 985–86; ECF No. [17]; ECF No. [19] at 4–5. For the same reason, Plaintiffs did not meet the requirements of the first section of option two —

that is, service on either Katherine Fernandez Rundle, who is the State Attorney for the Eleventh Judicial Circuit of Florida, or one of her assistant State Attorneys. *See* Meet the State Attorney, Miami State Attorney's Office, https://miamisao.com/about/meet-the-sa/; ECF No. [17]; ECF No. [19] at 4–5. Nor does it appear from the proof of service that Plaintiffs met the requirements of the second section of option two, as that document does not indicate Plaintiffs sent Uthmeier <u>two</u> copies of the process. *See* Fla. Stat. § 48.121; ECF No. [17]. So Plaintiffs' service by mail also failed to satisfy the dictates of Rule 4(j)(2).

As a result, the Court finds that Plaintiffs' attempts at service on DeSantis and Uthmeier were ineffective under either Rule 4(e) or Rule 4(j)(2) and that service on DeSantis and Uthmeier must be quashed. And because effective service is a prerequisite to the entry of clerk's default, *see Harris*, 2025 WL 509448, at *1; *Mancha*, 2021 WL 3849745, at *1, the Motion to Set Aside Clerk's Default Against DeSantis and Uthmeier, **ECF No. [43]**, is **GRANTED**. For the same reasons, the Motion to Preserve Clerk's Default Against DeSantis and Uthmeier, **ECF No. [47]**, is **DENIED**.

### 3. Service/Clerk's Default Against Trump, Turner, and Bondi, ECF Nos. [52] & [53]

In the Motion for Clerk's Default Against Trump, Turner, and Bondi, Plaintiffs contend they have met the requirements for entry of Clerk's default against those Defendants because Plaintiffs properly served each of them and also the civil process clerk for the Southern District of Florida, but none of them responded to the Complaint within the time allotted.[9] *See* ECF No. [52]. In the Motion for Default Judgment Against Trump, Turner, and Bondi, Plaintiffs repeat their contention that they have met the requirements for entry of Clerk's default against Trump, Turner,

---

[9] Only Plaintiff Young signed these motions, but Plaintiffs filed documents signed by all four of them indicating they have reviewed, consent to, and adopt "all factual statements, legal arguments, and requests for relief contained in" the filings at ECF Nos. [52] and [53]. *See* ECF No. [60]; ECF No. [61].

and Bondi and argue that the Court should take the next step and enter default judgment against those Defendants because they have admitted all "well-pleaded facts" in the Complaint by failing to respond. *See* ECF No. [53]. Defendants Trump, Turner, and Bondi have not responded to either motion.

As already explained, for entry of Clerk's default to be appropriate against Trump, Turner, and Bondi, Plaintiffs must have properly served them. *See Harris*, 2025 WL 509448, at *1; *Mancha*, 2021 WL 3849745, at *1. And to serve a United States employee sued only in an official capacity, as President Trump, Secretary Turner, and U.S. Attorney General Bondi are here, Plaintiffs had to serve each of those Defendants and the United States itself. *See* Fed. R. Civ. P. 4(i). To serve Trump, Turner, and Bondi individually, Plaintiffs had to send a summons and the complaint to each of them by registered or certified mail. *See* Fed. R. Civ. P. 4(i)(2). To serve the United States, Plaintiffs had to send a summons and the complaint by registered or certified mail to the Attorney General (that is, Bondi); to each officer (that is, Trump, Turner, and Bondi); and to the civil-process clerk at the relevant United States Attorney's office (that is, the United States Attorney for the Southern District of Florida). *See* Fed. R. Civ. P. 4(i)(1).

The proofs of service Plaintiffs filed demonstrate that they have done each of those things. *See* ECF No. [12] at 9–19; ECF No. [52-1] at 9–16; ECF No. [53-1] at 9–15. Plaintiffs include in their proofs of service certified mail tracking information and receipts showing that Trump, Turner, Bondi, and the civil process clerk for the Southern District of Florida's United States Attorney's Office were each sent documents to their respective workplace addresses in July 2025. *See* ECF No. [12] at 9–19; ECF No. [52-1] at 9–16; ECF No. [53-1] at 9–15. The proofs of service aver that those documents included a summons and the complaint, *see* ECF No. [12] at 1, and the receipts indicate that all the packages were received in July 2025, *see* ECF No. [12] at 9–19.

Because Plaintiffs served Trump, Turner, Bondi, and the United States as directed in Rule 4(i), the Court finds service was proper and effective as to those Defendants. *See* Fed. R. Civ. P. 4(i).

As a result of that finding, the Court also finds the entry of Clerk's default against Trump, Turner, and Bondi is appropriate. When a party fails to plead or otherwise defend and that failure "is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55 (a). Here, Plaintiffs note in the Motion for Clerk's Default Against Trump, Turner, and Bondi that they effectuated service on Trump, Turner, and Bondi on July 25, 2025 but that those Defendants failed "to plead or otherwise defend." *See* ECF No. [52] at 1–4. And in the Motion for Default Judgment Against Trump, Turner, and Bondi, Plaintiffs add that those Defendants "had 60 days to respond" but that as of October 7, 2025, "no answer, appearance, or responsive pleading has been filed." *See* ECF No. [53] at 3. From the Court's review of the motions and the docket, these representations are accurate. That means Plaintiffs have satisfied the two prerequisites of Clerk's default (effective service and failure to respond) as to Trump, Turner, and Bondi. *See* Fed. R. Civ. P. 55(a); *Harris*, 2025 WL 509448, at *1; *Mancha*, 2021 WL 3849745, at *1. Accordingly, the Motion for Clerk's Default Against Trump, Turner, and Bondi, **ECF No. [52]**, is **GRANTED**. The Clerk's Office is therefore **DIRECTED** to **ENTER CLERK'S DEFAULT** against Trump, Turner, and Bondi pursuant to Rule 55(a).

As to Plaintiffs' request for default judgment against those Defendants, however, a different result is appropriate. Although the entry of Clerk's default is a ministerial act that follows automatically from meeting the requirements of Rule 55(a), the same is not true of default judgment under Rule 55(b). Instead, to gain default judgment, Plaintiffs must demonstrate there is a sufficient basis in the pleadings for the judgment to be entered. *See* Fed. R. Civ. P. 55(b); *Surtain*, 789 F.3d at 1245. In fact, the Rules make clear default judgment can be entered against

21

Trump, Turner, and Bondi only if Plaintiffs establish their claims or right to relief "by evidence that satisfies" the Court. *See* Fed. R. Civ. P. 55(d); *Compania Interamericana*, 88 F.3d at 951. To determine if Plaintiffs have provided evidence to satisfy this burden, the Court must accept their well-pleaded allegations of fact as true, disregard conclusions of law and facts that are not well-pleaded, and then assess whether the Complaint allows for the reasonable inference that Trump, Turner, and Bondi are liable for the misconduct alleged. *See Surtain*, 789 F.3d at 1245; *Chudasama*, 123 F.3d at 1370 n.41; *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.

After reviewing the Complaint through this lens, the Court concludes that it is not currently sufficient to support the entry of default judgment against Trump, Turner, and Bondi. As explained above, Plaintiffs' Complaint appears to assert two claims that, according to Plaintiffs, are predicated on § 1983, the Declaratory Judgment Act, and federal equitable jurisdiction. *See* ECF No. [1] at 16–17. The first claim alleges that the "federal government's failure to recognize" Indigenous of America "people as sovereign" has "violated the Guarantee Clause of Article IV, Section 4 of the U.S. Constitution." *See* ECF No. [1] at 15–16. The second claim alleges "14th Amendment birthright citizenship" has been improperly expanded to "children born to undocumented immigrants," which "dilutes the protection meant specifically for descendants of enslaved Africans." *See* ECF No. [1] at 16–17.

To remedy these wrongs, Plaintiffs seek abundant relief, including: (1) the certification of two classes, specifically "all Indigenous of America peoples and their nations" and "all descendants of emancipated African slaves"; (2) declarations about the sovereignty of Indigenous of America people and the purpose behind the 14th Amendment Citizenship Clause; (3) injunctions prohibiting "unlawful" interpretations of the 14th Amendment, "current and future land seizures, displacement programs, cultural commodification, or gentrification projects

22

targeting Indigenous and African-descended communities," and the "diversion" of federal funding away from these communities; (4) injunctions mandating "community-led governance over all federal programs affecting" these communities and the establishment of various programs and commissions; and (5) "restoration and reparations" in the form of restoring land and tribal sovereignty and awarding reparations payments of $30 trillion followed by $500 billion annually. *See* ECF No. [1] at 28–32.

While the Court recognizes both the realities of the historical harms these two communities have endured and its own obligation to construe *pro se* pleadings liberally, *see Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998), the Complaint as currently pleaded does not allow for the reasonable inference that Trump, Turner, and Bondi are liable for the misconduct alleged. Indeed, while the Complaint includes many details about the historical mistreatment of the two classes that the Court might properly consider to be factual allegations deemed admitted by default, *see Surtain*, 789 F.3d at 1245, it fails to set out the legal standards for the claims Plaintiffs assert or any facts to establish why Trump, Turner, and Bondi would be liable for such harms in their official capacities.  *See generally* ECF No. [1].  Because Plaintiffs do not frame the claims according to the applicable law, the Court is left to guess about what elements Plaintiffs must satisfy to succeed.

Although the Court must and does hold the Complaint to a less stringent standard than it would a complaint drafted by an attorney, *see Tannenbaum*, 148 F.3d at 1263, the Court cannot rewrite the Complaint to save it, *see, e.g.*, *United States v. Cordero*, 7 F.4th 1058, 1068 n.11 (11th Cir. 2021) (recognizing "a court may not serve as *de facto* counsel for a party or rewrite a pleading" (quotation marks omitted)).  Yet that is exactly what the Court would have to do to determine whether Plaintiffs' factual allegations, taken as true, support granting them any of the relief they

seek.  Indeed, to decide whether the Complaint states a claim, the Court would first have to decide what law could possibly apply from the options Plaintiffs mention in passing but fail to flesh out, including § 1983, the Declaratory Judgment Act, federal equitable jurisdiction, the Guarantee Clause, and the 14th Amendment.  *See* ECF No. [1] at 15–17.  The Court would then have to set out the applicable provisions of that law and sift through the Complaint for factual allegations that could match up to those provisions.  If that is not serving as *de facto* counsel for Plaintiffs or rewriting their pleading, *see Cordero*, 7 F.4th at 1068 n.11, it is hard to imagine what is.

Because the Complaint does not explain in enough detail what law supports the relief Plaintiffs seek and how the allegations link with that law to show that Trump, Turner, and Bondi are liable for the misconduct alleged, Plaintiffs have not established their claims or right to relief by evidence that satisfies the Court.  *See* Fed. R. Civ. P. 55(d); *Compania Interamericana*, 88 F.3d at 951; *Surtain*, 789 F.3d at 1245; *Chudasama*, 123 F.3d at 1370 n.41; *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.  Accordingly, Plaintiffs have not established their entitlement to a default judgment against Trump, Turner, and Bondi under Rule 55(b) or Rule 55(d).  For that reason, the Motion for Default Judgment Against Trump, Turner, and Bondi, **ECF No. [53]**, is **DENIED WITHOUT PREJUDICE**. *See Compania Interamericana*, 88 F.3d at 951; *Johnson*, 2008 WL 435180, at *4; *Rumph*, 2010 WL 114965, at *1; *Rives*, 2011 WL 13157115, at *2.

If Plaintiffs choose to amend their Complaint to comply with the pleading standards of Rules 8 and 10, including a recitation of the facts necessary to support the specific elements they must satisfy to prove their claims and a recitation of the factual allegations that link those claims to show that Trump, Turner, and Bondi are liable for the misconduct alleged, Plaintiffs must first obtain the consent of Defendants or seek leave of Court to do so.  *See* Fed. R. Civ. P 15(a)-(b).  The Court notes that Plaintiffs would have to serve any Amended Complaint on Defendants.  If

any properly served Defendants fail to respond to the Amended Complaint within the time allotted by law, then Plaintiffs would have to seek a Clerk's Default as to that Amended Complaint for those Defendants who did not timely respond.  As to any Amended Complaint, Plaintiffs may not move for the entry of a Default Judgment against any Defendant until after Plaintiffs have obtained a Clerk's Default.

## B.  Substantive/Classification Motions

The remainder of the motions at issue here ask the Court to rule on the merits of Plaintiffs' claims and on whether Plaintiffs can bring those claims as representatives for the two classes, described above, that they seek to certify.  Because the Court has concluded that Plaintiffs have failed to perfect service on all Defendants other than Trump, Turner, and Bondi, *see supra* Parts III.A.1, III.A.2, and that the Complaint as currently pleaded lacks the requisite legal specificity and detail to state a claim on which relief can be granted, *see supra* Parts III.A.3, the Court concludes it is premature to evaluate the merits of Plaintiffs' claims now.  Instead, judicial efficiency would be best served by waiting to assess the merits of Plaintiffs' claims until Plaintiffs remedy the deficiencies in the Complaint, all Defendants have been properly served, and those Defendants who wish to respond have responded.  *See In re Worldwide*, 328 F.3d at 1295; *Surtain*, 789 F.3d at 1244–45; *Varnes*, 674 F.2d at 1369–70; *Davis*, 302 F.2d at 495.

Accordingly, to exercise its inherent authority to manage its own docket, *see Smith v. Psychiatric Sols., Inc.*, 750 F.3d 1253, 1262 (11th Cir. 2014) ("District courts have unquestionable authority to control their own dockets." (quotation marks omitted)); *Young v. City of Palm Bay*, 358 F.3d 859, 864 (11th Cir. 2004) ("A district court must be able to exercise its managerial power to maintain control over its docket."); *Chudasama*,123 F.3d at 1366 (noting district courts have "broad discretion in deciding how best to manage the cases before them"), the Amended Motion

for Constitutional Review, **ECF No. [10]**; the Motion for Class Certification, **ECF No. [11]**; the Motion for Constitutional Review, **ECF No. [14]**; and the Motion for Historical Relief, **ECF No. [16]**, are **DENIED WITHOUT PREJUDICE**.  If they wish, Plaintiffs may refile these motions once all Defendants have been properly served and a Scheduling Order has been entered setting forth all pre-trial deadlines.

The Court also notes that Plaintiffs have engaged in a pattern of filing a motion and then filing a second motion (or third motion) seeking a duplicative form of relief before the Court has had an opportunity to rule on the first motion.  Plaintiffs are cautioned against filing duplicative motions and are warned that such practices, if continued, may lead the Court to classify them as vexatious filers in the future.  The Court will rule on all motions in due course.  Going forward, if Plaintiffs  continue to file motions seeking duplicative forms of relief, the Court will automatically strike such duplicative filings.

## IV.    CONCLUSION

For the reasons explained above:

1.  Plaintiffs' Amended Motion for Constitutional Review, Protection of Indigenous American Birthright, and Emergency Declaratory Relief, **ECF No. [10]**, is **DENIED WITHOUT PREJUDICE**;

2.  Plaintiffs' Motion for Class Certification Pursuant to Fed. R. Civ. P. 23, **ECF No. [11]**, is **DENIED WITHOUT PREJUDICE**;

3.  Plaintiffs' Motion for Constitutional Review, Protection of Indigenous American Birthright, and Emergency Declaratory Relief, **ECF No. [14]**, is **DENIED WITHOUT PREJUDICE**;

4.  Plaintiffs' Motion for Historical Relief, Compensation, and Acknowledgement

of Injustices, **ECF No. [16]**, is **DENIED WITHOUT PREJUDICE**;

5. Defendant Levine Cava's Motion to Quash Service, **ECF No. [25]**, is **GRANTED**;

6. Plaintiffs' Motion to Compel Entry of Default and Strike Motion to Quash, **ECF No. [28]**, is **DENIED**;

7. Defendants DeSantis and Uthmeier's Motion to Set Aside Clerk's Default, **ECF No. [43]**, is **GRANTED**;

8. Plaintiffs' Motion to Dismiss Defendants' Motion to Set Aside Clerk's Default, **ECF No. [47]**, is **DENIED**;

9. Plaintiffs' Motion for Relief from Clerk's Error and to Consider Late Filing, **ECF No. [49]**, is **DENIED**;

10. Plaintiffs' Motion to Dismiss Defendant Levine Cava's Motion to Quash, **ECF No. [51]**, is **DENIED**;

11. Plaintiffs' Request for Clerk's Entry of Default against Defendants Trump, Turner, and Bondi, **ECF No. [52]**, is **GRANTED** so the Clerk of Court is **DIRECTED TO ENTER A CLERK'S DEFAULT** against Defendants Trump, Turner, and Bondi; and

12. Plaintiffs' Motion for Clerk's Entry of Default and Default Judgment against Defendants Trump, Bondi, and Turner, **ECF No. [53]**, is **DENIED WITHOUT PREJUDICE**.

CASE NO. 25-CV-23025-ELFENBEIN

**DONE and ORDERED** in Chambers in Miami, Florida on October 14, 2025.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

Copies to:

**Rubin Young**
14060 SW 258th Street
Homestead, FL 33032
*PRO SE*

**Sybil W. Lee**
602 NW 100th Street
Miami, FL 33032
*PRO SE*

**Keith Wilson**
P.O. Box 1445
Miami, FL 33147
*PRO SE*

**Willie A. Thomas**
3985 NW 176th Street
Miami Gardens, FL 33055
*PRO SE*